STATE OF WEST VIRGINIA

*In re* **T.D. and K.C.**

**No. 17-1072** (Taylor County 17-JA-37 and 38)

**FILED**

**May 14, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother J.C., by counsel Phillip S. Isner and David C. Fuellhart III, appeals the Circuit Court of Taylor County's November 3, 2017, order terminating her parental rights to T.D. and K.C.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Brandolyn N. Felton-Ernest, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Mary S. Nelson, filed a response on behalf of the children in support of the circuit court's order. The psychological mother and custodian of the children G.A., by counsel Samantha L. Koreski, filed a response, also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying her a post-adjudicatory and post-dispositional improvement period, denying her the opportunity to present evidence in favor of her motion for a post-adjudicatory improvement period, failing to hold an adjudicatory hearing within thirty days of the preliminary hearing, and terminating her parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In March of 2017, the DHHR filed an abuse and neglect petition against petitioner. The DHHR alleged that petitioner abandoned the children as she had not had care, custody, or control of them since September of 2012, when the children were placed with G.A., a family friend. K.C. was three years old and T.D. was four months old at that time. Petitioner lived in Alexandria, Virginia, and did not see the children between 2012 and 2014. In 2014, petitioner initiated a family court proceeding in an attempt to regain custody. At the time the instant petition was filed, the family court proceedings were still ongoing and petitioner had only been granted visitation twice a month, in part due to her substance abuse and failure to reduce her dosage of methadone as directed. In fact, petitioner's methadone dosage increased during the

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

family court proceedings. While the family court granted petitioner visitation, she only sporadically visited the children and completely failed to do so from August of 2016 to February of 2017. In addition to petitioner's abandonment of the children, the DHHR alleged that petitioner had a substance abuse issue dating back to 2007. Petitioner admitted to abusing heroin and that both children were born with controlled substances in their systems.

The circuit court held a preliminary hearing in April of 2017, which petitioner waived. The circuit court then proceeded to question her. Petitioner testified that she takes methadone due to her drug abuse and Seroquel and Klonopin for her bipolar disorder. She admitted that her children experienced withdrawals from methadone at birth. Petitioner also admitted that she had not provided financial support to her children since 2013 and that the supervised visitation she was granted in the family court proceedings had been suspended due to lack of visits. The circuit court then questioned G.A., the psychological mother, who testified that the children had been in her custody for nearly five years. Further, G.A. testified that she received little financial support from petitioner and that petitioner was inconsistent in visiting the children. The circuit court noted that petitioner appeared to be in a drug-induced state and ordered that she be drug tested before she would be permitted to drive her vehicle. The circuit court ordered that the children remain in the care, custody, and control of the DHHR with placement remaining with G.A.[2]

The circuit court reconvened the adjudicatory hearing in June of 2017. Petitioner was not present, but was represented by counsel, who informed the circuit court that she failed to notify petitioner of the hearing. The circuit court determined that the hearing would be rescheduled, but first heard the testimony of the sheriff who performed a sobriety test of petitioner following the prior hearing. After hearing the testimony, the circuit court found that petitioner's drug screen revealed that her methadone levels were "through the roof" and that her rental vehicle was seized after learning that she was not an authorized driver on the rental contract.

In August of 2017, the circuit court held a final adjudicatory hearing, during which petitioner stipulated that she had sporadic contact with the children since 2014 and failed to titrate off of methadone. Petitioner did not admit that her drug usage negatively impacted her children. The circuit court accepted petitioner's stipulation and adjudicated her as an abusing parent. The circuit court denied petitioner's motion for a post-adjudicatory improvement period, finding that it was not warranted given that the children had been out of petitioner's custody for years and that they needed permanency. Further, the circuit court noted that petitioner appeared at both family court proceedings and the instant proceedings in a drug-induced state and that she failed to address these issues over the years.

The circuit court held a dispositional hearing in September of 2017, wherein petitioner requested a post-dispositional improvement period and testified to her willingness to comply with the terms and conditions of the same. A DHHR worker testified that the DHHR recommended termination because it believed that adoption by G.A. was in the children's best

---

[2]While this hearing was scheduled as a preliminary hearing, the circuit court issued an order titled "Preliminary Hearing and Beginning of Adjudication Order," wherein it stated that the circuit court considered "this to be the beginning of the adjudication." Further, several subsequent orders refer to this hearing as an initial adjudicatory hearing.

interests, as they had been in her care for five years. After hearing evidence, the circuit court found that the children had been in G.A.'s care for five years and that her home was the only home the children could remember. The circuit court found that the children were in need of permanency and that petitioner's drug abuse had not abated over the years. Petitioner appeared in family court under the influence of drugs in 2014, and again in the instant proceedings in 2017. Further, petitioner maintained only sporadic contact with the children and the circuit court found that her actions constituted abandonment. Accordingly, the court denied petitioner's motion for a post-dispositional improvement period and found that there was no alternative to termination of petitioner's parental rights and that the children's best interest required termination. It is from the November 3, 2017, order terminating petitioner's parental rights that she appeals.[3]

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred by not affording her an opportunity to present evidence or argue in favor of her motion for a post-adjudicatory improvement period. Specifically, petitioner argues that the circuit court allowed the DHHR and the guardian to present their positions regarding petitioner's motion for a post-adjudicatory improvement period and then immediately denied the motion without affording petitioner time to argue her motion or present evidence. However, a review of the record indicates that petitioner did not express a desire to either provide evidence or an argument in support of her motion, nor did she object to the circuit court denying her motion without providing her the opportunity to do so. As such, petitioner has waived her right to raise this issue on appeal. *See State v. Jessie*, 225 W.Va. 21, 27, 689 S.E.2d 21, 27 (2009) ("This Court's general rule is that nonjurisdictional questions not raised at the circuit court level will not be considered to the first time on appeal."). Accordingly, the Court finds that petitioner is entitled to no relief in this regard.

---

[3]The father's parental rights were also terminated during the proceedings below. The permanency plan for the children is adoption by their psychological mother, G.A., with whom they have continuously resided since 2012.

Petitioner next argues that the circuit court erred in denying her both a post-adjudicatory and post-dispositional improvement period. Specifically, petitioner argues that she demonstrated that she was likely to comply with the terms and conditions of an improvement period by driving to West Virginia from her home in Alexandria, Virginia for visits, hearings, and multidisciplinary team ("MDT") meetings and by testifying that she has been participating in a methadone clinic since 2013. We disagree. The decision to grant or deny an improvement period rests in the sound discretion of the circuit court. *See In re: M.M.*, 236 W.Va. 108, 115, 778 S.E.2d 338, 345 (2015) ("West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period"); Syl. Pt. 6, in part, *In re Katie S.*, 198 W.Va. 79, 479 S.E.2d 589 (1996) ("[i]t is within the court's discretion to grant an improvement period within the applicable statutory requirements"). We have also held that a parent's "entitlement to an improvement period is conditioned upon the ability of the [parent] to demonstrate 'by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period . . . .'" *In re: Charity H.*, 215 W.Va. 208, 215, 599 S.E.2d 631, 638 (2004).

While petitioner argues that she would have fully participated in an improvement period, her actions throughout the proceedings below demonstrate otherwise. The evidence established that petitioner missed one of the adjudicatory hearings and two MDT meetings. Petitioner was ordered to reduce her dosage of methadone throughout the family court proceedings but failed to do so. In fact, petitioner's dosage increased. Moreover, petitioner failed to visit the children consistently. The record indicates that petitioner did not visit her children for two years between 2012 and 2014. She was granted visitation in the family court proceedings but it was terminated due to lack of visits. Nevertheless, petitioner was granted visitation in the instant proceedings and missed one out of three visits. "We have previously pointed out that the level of interest demonstrated by a parent in visiting his or her children while they are out of the parent's custody is a significant factor in determining the parent's potential to improve sufficiently and achieve minimum standards to parent the child." *In re Katie S.*, 198 W.Va. 79, 90, n. 14, 479 S.E.2d 589, 600, n. 14 (1996)(citing *In Interest of Tiffany Marie S.*, 196 W.Va. at 228 and 237, 470 S.E.2d at 182 and 191; *State ex rel. Amy M. v. Kaufman*, 196 W.Va. 251, 259, 470 S.E.2d 205, 213 (1996)). Petitioner's behavior over the course of the years the children have been out of her custody demonstrates that she had little interest in visiting them. Based on the evidence, we agree with the circuit court's finding that an improvement period was unnecessary in this case as petitioner was unlikely to fully participate in the same.

Petitioner also argues that the circuit court erred by not holding an adjudicatory hearing within thirty days of the preliminary hearing. Petitioner relies on Rule 25 of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings, which provides that "[w]hen a child is placed in the temporary custody of the [DHHR] or a responsible person pursuant to W.Va. Code § 49-4-602, the final adjudicatory hearing shall commence within thirty (30) days of the temporary custody order entered following the preliminary hearing[.]" According to petitioner, the circuit court erred by scheduling the adjudicatory hearing for June 7, 2017, more than thirty days after the April 11, 2017, preliminary hearing and attempted to inappropriately title the preliminary hearing order "Preliminary Hearing and Beginning of Adjudication Order" in an attempt to circumvent Rule 25. Further, petitioner states that if it was the circuit court's intent to begin the adjudicatory hearing during the preliminary hearing, it erroneously did so without providing her notice. We find petitioner's argument to be unpersuasive.

We have held that

> "[w]here it appears from the record that the process established by the Rules of Procedure for Child Abuse and Neglect Proceedings and related statutes for the disposition of cases involving children [alleged] to be abused or neglected has been substantially disregarded or frustrated, the resulting order . . . will be vacated and the case remanded for compliance with that process and entry of an appropriate . . . order." Syllabus point 5, in part, *In re Edward B.*, 210 W.Va. 621, 558 S.E.2d 620 (2001).

Syl. Pt. 3, *In re Emily G.*, 224 W.Va. 390, 686 S.E.2d 41 (2009). While the circuit court either held the adjudicatory outside of the thirty day time period set forth in Rule 25 or initiated the adjudicatory proceedings at the preliminary hearing without notice, we find that this procedural error does not warrant reversal of the order under the limited circumstances of this case. This is especially true in light of the fact that petitioner failed to attend the June of 2017 adjudicatory hearing, which resulted in a continuance. Therefore, petitioner's own behavior led to additional delays in the proceedings. Further, petitioner fails to show how such a delay or lack of notice prejudiced her when two other adjudicatory hearings to which she had notice were held in June and August of 2017. More importantly, "a mere procedural technicality does not take precedence over the best interests of the children." *In re Tyler D.*, 213 W.Va. 149, 160, 578 S.E.2d 343, 354 (2003). As this Court has held on numerous occasions, "the best interests of the child is the polar star by which decisions must be made which affect children." *Michael K.T. v. Tina L.T.*, 182 W.Va. 399, 405, 387 S.E.2d 866, 872 (1989). Syl. Pt. 1, *State ex rel. Cash v. Lively*, 155 W.Va. 801, 187 S.E.2d 601 (1972) ("'In a contest involving the custody of an infant the welfare of the child is the polar star by which the discretion of the court will be guided.' Point 2, Syllabus, *State ex rel. Lipscomb v. Joplin*, 131 W.Va. 302, [47 S.E.2d 221]."). Accordingly, we find no error.

Finally, petitioner argues that the circuit court erred in terminating her parental rights. Specifically, petitioner argues that the circuit court should have granted a lesser-restrictive alternative to termination of her parental rights, such as guardianship. We disagree. West Virginia Code § 49-4-604(b)(6) provides that circuit courts are to terminate parental rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the child's welfare. According to West Virginia Code § 49-4-604(c)(4), a situation in which there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected includes one in which "[t]he abusing parent or parents have abandoned the child[.]"

The record establishes that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect. Petitioner left the care, custody, and control of her children with G.A. in September of 2012. Thereafter, petitioner did not visit with her children for two years until she decided to petition the family court. Even then, petitioner was unable to satisfactorily participate in proceedings and was only permitted visitation with the children twice a month. Despite being granted the opportunity to be involved in the lives of her children, petitioner's inconsistent behavior continued and she missed supervised visits such that, after failing to visit with the children for nearly six months, her visitation rights were suspended.

Nevertheless, petitioner was granted the opportunity to visit with her children during the proceedings below but missed one out of only three visits. We find that petitioner's conduct meets the definition of "abandonment" as set forth in West Virginia Code § 49-1-201, which is any "conduct that demonstrates the settled purpose to forego the duties and parental responsibilities to the child[,]" as her nearly complete absence from the lives of her children for five years certainly demonstrates a settled purpose to forego her parental responsibilities. In addition to petitioner's failure to consistently visit her children, petitioner failed to provide for the children financially and was unable to successfully address her drug addiction by failing to reduce her dosage of methadone. While petitioner argues that the circuit court should have granted her a less-restrictive alternative to termination of her parental rights, we have previously held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, W. Va.Code [§] 49-6-5 [now West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under W. Va.Code [§] 49-6-5(b) [now West Virginia Code § 49-4-604(c)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W.Va. 558, 712 S.E.2d 55 (2011). Based on the evidence above, we find that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination was necessary for the children's welfare. Therefore, petitioner is entitled to no relief in this regard.

For the foregoing reasons, we find no error in the decision of the circuit court, and its November 3, 2017, order is hereby affirmed.

Affirmed.

**ISSUED**:  May 14, 2018

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Menis E. Ketchum
Justice Allen H. Loughry II
Justice Elizabeth D. Walker