# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **D.P.-1, J.P.-1, J.P.-2, and D.P.-2**

**No. 18-0170** (Wood County 16-JA-56, 57, 58, and 59)

**FILED**

**June 15, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother J.P.-3, by counsel Jeffrey O. Dye II, appeals the Circuit Court of Wood County's December 20, 2017, order terminating her parental rights to D.P.-1, J.P.-1, J.P.-2, and D.P.-2.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Brandolyn N. Felton-Ernest, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Debra Steed, filed a response on behalf of the children also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in finding that there was no reasonable likelihood that she could correct the conditions of abuse and neglect in the near future, terminating her parental rights when less-restrictive alternatives were available, and denying her post-termination visitation.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In May of 2016, the DHHR filed a child abuse and neglect petition against petitioner and the father. Thereafter, in August of 2016, an amended petition was filed alleging that, in May of 2016, J.P.-1 was observed to have bruising and redness to her eye and reported that she was punched in the face by her father. The child reported that her father instructed her to say that petitioner caused the injury with a hairbrush. The petition also indicated that the parents had a history of domestic violence in the home. The DHHR alleged that, after having been removed

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990). Additionally, because two of the children and petitioner share the same initials, we will refer to them as J.P.-1, J.P.-2, and J.P.-3, respectively, throughout this memorandum decision. Further, because two other children share the same initials, we will refer to them as D.P.-1 and D.P.-2, respectively.

from the home, the children were taken to the hospital where several additional injuries were discovered by the physician. All of the children were observed to have substantial bruising and scratches over their bodies. J.P.-2 was observed to have two black eyes and a hematoma on his forehead. D.P.-1 was also observed to have a hematoma on his scalp. The physician reported that many of the injuries were caused by blunt force trauma and grabbing the children with such force that bruises, finger marks, and restraint marks were left on the skin.

The circuit court held an adjudicatory hearing in November of 2016, wherein petitioner stipulated to the allegations contained in the petition. The circuit court accepted petitioner's stipulation, adjudicated her as an abusing parent, and granted her a post-adjudicatory improvement period.

A second amended petition was filed in May of 2017. The DHHR alleged that petitioner admitted to abusing heroin and other drugs throughout her improvement period, arrived to visits with the children under the influence of drugs, and failed to enter a drug rehabilitation treatment program. Shortly thereafter, the guardian filed a motion to terminate petitioner's improvement period. A hearing was held in June of 2017 and, after hearing evidence, the circuit court terminated petitioner's post-adjudicatory improvement period.

In July of 2017, the circuit court held a dispositional hearing wherein it heard the testimony of several witnesses regarding petitioner's noncompliance with her post-adjudicatory improvement period. A service provider testified that since January of 2017, petitioner provided nine positive drug screens and missed forty-three drug screens. The service provider also noted that petitioner was scheduled for two drug-abuse evaluations but failed to attend either appointment. Another service provider testified that, after two months of parenting and adult life skills services, petitioner began missing classes and appeared under the influence of drugs. The service provider also testified regarding petitioner's supervised visitation, stating that petitioner would "nod off" during her time with the children. The service provider testified that she questioned petitioner regarding her behavior and that petitioner admitted to abusing drugs. The service provider urged petitioner to enter a treatment program and offered to assist her, but petitioner failed to follow through with the recommendation. Petitioner's classes and supervised visitation were suspended in May of 2017 due to her failure to participate and her continued drug abuse.

Petitioner testified that she failed to attend her parenting and adult life skills classes, in part, due to her drug addiction and stated that she missed her drug-abuse evaluations due to oversleeping. When asked why she missed her drug screens, petitioner responded "[i]t's either I couldn't wake up or I was too high. But, I mean, I was on meth and I just didn't have – it just took over. It just didn't matter really anymore." Petitioner also testified that, at the time of the dispositional hearing, she was incarcerated for reckless driving, which arose from an incident wherein petitioner was driving her friend's car without a license and wrecked, killing another person. Petitioner stated that she had to serve forty-five more days before she would be released from incarceration. Ultimately, the circuit court found that petitioner was unable or unwilling to care for the children, continued to abuse methamphetamine, failed to participate in several aspects of her improvement period, and failed to make a reasonable effort to correct the conditions of abuse that led to the filing of the petition. As such, the circuit court found that there

was no reasonable likelihood that petitioner could correct the conditions of abuse in the near future and that termination was necessary for the children's welfare. The circuit court denied petitioner post-termination visitation and terminated her parental rights. It is from the December 20, 2017, order that petitioner appeals.[2]

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in finding that there was no reasonable likelihood that petitioner could correct the conditions of abuse. Specifically, petitioner alleges that the conditions of abuse to which she stipulated were corrected by ending her relationship with the father.[3] We disagree. According to West Virginia Code § 49-4-

---

[2]The father is currently participating in an improvement period and the permanency plan is for the children to return to his care pending his successful completion of the improvement period. The concurrent permanency plan is adoption by the foster parents.

[3]As part of her argument, petitioner notes that the second amended petition contained allegations of substance abuse, but states that she was never adjudicated upon these allegations, nor did she stipulate to them. As such, petitioner argues that they should not be the basis for finding that there was no reasonable likelihood that she could correct the conditions of abuse and/or neglect and terminating her parental rights. We have previously held that

> "[w]here it appears from the record that the process established by the Rules of Procedure for Child Abuse and Neglect Proceedings and related statutes for the disposition of cases involving children [alleged] to be abused or neglected has been substantially disregarded or frustrated, the resulting order . . . will be vacated and the case remanded for compliance with that process and entry of an

(continued . . .)

604(c)(3), a situation in which there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected includes one in which

> [t]he abusing parent or parents have not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare or life of the child[.]

Here, the record demonstrates that petitioner was granted a post-adjudicatory improvement period in November of 2016. Petitioner was offered several services but failed to take advantage of them. Testimony at the dispositional hearing established that petitioner failed to participate in her parenting and adult life skills classes such that she was discharged from the program. Further, supervised visitation with the children was also terminated due to petitioner's noncompliance. Petitioner was ordered to submit to a drug-abuse evaluation, a psychological evaluation, and group sessions to address her issues with domestic violence, but failed to follow through with any of these services. As such, we find that that the circuit court did not err in finding that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future as she clearly did not follow through with the family case plan.

---

appropriate . . . order." Syllabus point 5, in part, *In re Edward B.*, 210 W.Va. 621, 558 S.E.2d 620 (2001).

Syl. Pt. 3, *In re Emily G.*, 224 W.Va. 390, 686 S.E.2d 41 (2009). While the record is unclear as to whether petitioner was adjudicated following the second amended petition, we find that this alleged error does not warrant reversal of the dispositional order under the limited circumstances of this case. Specifically, petitioner testified below that her substance abuse was the root cause of her failure to comply with the terms and conditions of her improvement period. According to petitioner, she failed to attend parenting and adult life skills education and drug screens because of her substance abuse. Accordingly, it is clear that, regardless of whether petitioner was adjudicated upon her substance abuse, the effects of the same were relevant to her inability to complete services designed to correct the conditions of abuse and neglect upon which she was properly adjudicated. Moreover, "a mere procedural technicality does not take precedence over the best interests of the children." *In re Tyler D.*, 213 W.Va. 149, 160, 578 S.E.2d 343, 354 (2003). As this Court has held on numerous occasions, "the best interests of the child is the polar star by which decisions must be made which affect children." *Michael K.T. v. Tina L.T.*, 182 W.Va. 399, 405, 387 S.E.2d 866, 872 (1989). Syl. Pt. 1, *State ex rel. Cash v. Lively*, 155 W.Va. 801, 187 S.E.2d 601 (1972) ("'In a contest involving the custody of an infant the welfare of the child is the polar star by which the discretion of the court will be guided.' Point 2, Syllabus, *State ex rel. Lipscomb v. Joplin*, 131 W.Va. 302, [47 S.E.2d 221].").   Accordingly, we find that petitioner is entitled to no relief in this regard.

4

Petitioner also argues that the circuit court erred in terminating her parental rights when less-restrictive alternatives were available. Specifically, petitioner argues that an alternative disposition would have been appropriate because she "may have been able to correct the deficiencies" in her parenting following her release from incarceration. We find petitioner's argument to be without merit. West Virginia Code § 49-4-604(b)(6) provides that circuit courts are to terminate parental rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the child's welfare. As discussed above, the circuit court correctly found that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect due to her complete failure to follow through with any aspect of her improvement period. In fact, several services were terminated during petitioner's post-adjudicatory improvement period due to her noncompliance. Despite its impact on her inability to comply with services, testimony at the dispositional hearing established that petitioner continued to have a substance abuse problem and remained incarcerated at the time of the dispositional hearing due to her conviction for driving on a suspended license, a situation which resulted in a wreck that killed another person. Further, termination of petitioner's parental rights was necessary for the children's welfare as evidence established that petitioner lacked a bond with the children.

Moreover, petitioner's argument that she "may" have been able to correct the conditions of abuse and neglect is unpersuasive due to its purely speculative nature. This Court has held that "courts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened. . . ." Syl. Pt. 4, in part, *In re Kristin Y.*, 227 W.Va. 558, 712 S.E.2d 55 (2011)(quoting Syl. Pt. 1, in part, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980)). While petitioner argues that the circuit court should not have terminated her parental rights without first granting her a less-restrictive alternative disposition, we have previously held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, W.Va. Code [§] 49-6-5 [now West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under W. Va.Code [§] 49-6-5(b) [now West Virginia Code § 49-4-604(c)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W.Va. at 558, 712 S.E.2d at 55. Based upon the evidence, we agree with the circuit court's decision to terminate petitioner's parental rights upon findings that there was no reasonable likelihood that petitioner could correct the conditions of abuse and/or neglect and that termination was necessary for the children's welfare. Accordingly, we find no error.

Petitioner lastly argues that the circuit court erred in denying her post-termination visitation with the children. According to petitioner, the circuit court erroneously found that she failed to prove the existence of a bond with her children when testimony at the dispositional

hearing established that "although not strong with all of the children, a bond nevertheless existed." We find petitioner's argument to be unpersuasive.

> "When parental rights are terminated due to neglect or abuse, the circuit court may nevertheless in appropriate cases consider whether continued visitation or other contact with the abusing parent is in the best interest of the child. Among other things, the circuit court should consider whether a close emotional bond has been established between parent and child and the child's wishes, if he or she is of appropriate maturity to make such request. The evidence must indicate that such visitation or continued contact would not be detrimental to the child's well being and would be in the child's best interest." Syl. Pt. 5, *In re Christina L.*, 194 W.Va. 446, 460 S.E.2d 692 (1995).

Syl. Pt. 11, *In re Daniel D*., 211 W.Va. 79, 562 S.E.2d 147 (2002). Here, petitioner failed to establish that post-termination visitation would be in the best interests of the children. Petitioner failed to consistently visit with the children throughout her improvement period such that visitation was terminated. Testimony at the dispositional hearing established that petitioner paid more attention to one child, upsetting the other children. Further, the children appeared apathetic to their visits with the mother and were neither happy nor sad when petitioner failed to appear. As such, we find that the circuit court did not abuse its discretion in denying petitioner post-termination visitation as the evidence supports a finding that it would not be in the children's best interests.

Lastly, because the proceedings in circuit court regarding the father are still ongoing, this Court reminds the circuit court of its duty to establish permanency for the children. Rule 39(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings requires:

> At least once every three months until permanent placement is achieved as defined in Rule 6, the court shall conduct a permanent placement review conference, requiring the multidisciplinary treatment team to attend and report as to progress and development in the case, for the purpose of reviewing the progress in the permanent placement of the child.

Further, this Court reminds the circuit court of its duty pursuant to Rule 43 of the Rules of Procedure for Child Abuse and Neglect Proceedings to find permanent placement for the children within twelve months of the date of the disposition order. As this Court has stated,

> [t]he [twelve]-month period provided in Rule 43 of the West Virginia Rules of Procedures for Child Abuse and Neglect Proceedings for permanent placement of an abused and neglected child following the final dispositional order must be strictly followed except in the most extraordinary circumstances which are fully substantiated in the record.

*Cecil T.*, 228 W.Va. at 91, 717 S.E.2d at 875, Syl. Pt. 6. Moreover, this Court has stated that

[i]n determining the appropriate permanent out-of-home placement of a child under W.Va. Code § 49-6-5(a)(6) [1996] [now West Virginia Code § 49-4-604(b)(6)], the circuit court shall give priority to securing a suitable adoptive home for the child and shall consider other placement alternatives, including permanent foster care, only where the court finds that adoption would not provide custody, care, commitment, nurturing and discipline consistent with the child's best interests or where a suitable adoptive home can not be found.

Syl. Pt. 3, *State v. Michael M.*, 202 W.Va. 350, 504 S.E.2d 177 (1998). Finally, "[t]he guardian ad litem's role in abuse and neglect proceedings does not actually cease until such time as the child is placed in a permanent home." Syl. Pt. 5, *James M. v. Maynard*, 185 W.Va. 648, 408 S.E.2d 400 (1991).

For the foregoing reasons, we find no error in the decision of the circuit court, and its December 20, 2017, order is hereby affirmed.

Affirmed.

**ISSUED**:  June 15, 2018

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Menis E. Ketchum
Justice Elizabeth D. Walker

Justice Allen H. Loughry II, suspended and therefore not participating