STATE OF WEST VIRGINIA

**In re O.S. and D.S.**

**No. 18-0431** (Cabell County 17-JA-238 and 17-JA-239)

**FILED**

**October 19, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother T.S., by counsel Timothy P. Rosinsky, appeals the Circuit Court of Cabell County's March 27, 2018, order terminating her parental rights to O.S. and D.S.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Mindy M. Parsley, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Cathy L. Greiner, filed a response on behalf of the children also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying her a post-adjudicatory improvement period, terminating her parental rights at a hearing not properly noticed as a dispositional hearing, and denying her post-termination visitation.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In September of 2017, the DHHR filed a child abuse and neglect petition against petitioner due, in part, to her diminished intellectual capabilities, resulting in an inability to care for the children. Specifically, the DHHR alleged that petitioner had a history of depression and refused to properly care for the children. A witness reported that petitioner continually stated that she wished that her then three-month-old O.S. would "grow up" and that she wanted other people to care for the child until that time. The witness further reported that petitioner attempted to give O.S. to anyone who would watch her. A Child Protective Services ("CPS") worker interviewed petitioner, who reported that O.S. was living with a relative named "Heather" in Ohio, but could not provide that relative's last name or her contact information. Petitioner stated that she was having problems caring for O.S. and needed help and medication. The DHHR

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

alleged that O.S. had hand, foot, and mouth disease and a vaginal fungal infection. Further, the DHHR asserted that petitioner did not provide sufficient food or housing for the children and allowed her father to bring prostitutes into the home.

At some time during the proceedings, petitioner was appointed a guardian ad litem due to her diminished intellectual capabilities.[2] Prior to the adjudicatory hearing, the DHHR filed a summary with the circuit court indicating that petitioner failed her home study due to her history of CPS intervention and recent "unusual behavior," including lying on the sidewalk for extended periods of time and standing in an alleyway in the pouring rain staring at nothing. Thereafter, in November of 2017, the circuit court held an adjudicatory hearing, wherein the DHHR presented the testimony of a CPS worker who reported that petitioner did not have food in the home for the children, frequently attempted to give O.S. to others, and informed the worker that she could not care for O.S. After hearing evidence, the circuit court adjudicated petitioner as an abusing parent. Counsel for petitioner requested a psychological evaluation be performed in order to determine whether services would be beneficial to petitioner. Petitioner was also granted supervised visitation and parenting and adult life skills classes.

Later in November of 2017, the children's guardian filed a motion to cease visitation between petitioner and the children. According to the guardian, petitioner did not demonstrate the ability to care for O.S. and did not bring any supplies to her visit with the children. It was reported that petitioner gave then five-year-old D.S. coffee creamer to drink and laughed when the service provider informed her that he purposefully defecated on himself, stating he could "wear diapers like he did at my house." During the visit, D.S. acted out sexual intercourse between two dolls and petitioner told the child that he was "doing a good job." Based on these issues, the guardian did not believe further visitation would be in the children's best interests.

In December of 2017, the circuit court held a hearing on the children's guardian's motion to cease visitation. The circuit court was advised that petitioner could not follow basic instructions during the visits. In fact, the parenting and adult life skills provider proffered that the sessions with petitioner had not been productive and that there was no further instruction that would improve petitioner's supervised visitation. Additionally, a summary provided by the DHHR indicated that petitioner demonstrated incessant repetitive behavior by calling the DHHR and CPS "all day long, every day." Each time, petitioner asked the same questions and, within a five-day period, left one CPS worker forty-seven voicemails. After hearing evidence, the circuit court temporarily suspended petitioner's supervised visitation and ordered that she undergo a psychological evaluation.

Later that December, a multidisciplinary team ("MDT") meeting was held wherein a case plan was developed for petitioner. The case plan required her to maintain stable housing and employment, participate in adult life skills and parenting classes, complete a parental fitness evaluation, and follow any recommendations set forth following the evaluation.

---

[2]Melia Adkins was appointed as petitioner's guardian ad litem.

Petitioner continued participating in services but was unsuccessful in implementing the adult life skills and parenting class information such that, in February of 2018, the DHHR filed a notice of intent to terminate petitioner's parental rights, stating

> [p]lease take notice that the above-styled case is set down for hearing on the 5th day of March, 2018 at 9:00 a.m. . . . at which time [the DHHR] does intend to move to terminate the parental rights of [petitioner] . . . at which time you may appear to protect your interests should you so desire.

The circuit court held a dispositional hearing, originally scheduled as a review hearing, on March 5, 2018. At this hearing, as indicated in its notice, the DHHR recommended that the circuit court terminate petitioner's parental rights and the matter proceeded to disposition. A CPS worker testified that petitioner underwent a psychological evaluation and the evaluator opined that her prognosis for attaining minimally adequate parenting was poor and it was unlikely that she would benefit from any services offered by CPS. Petitioner's guardian proffered that petitioner was unable to follow simple instructions and excessively called the DHHR and other MDT members up to sixty times per day, asking repetitive questions. In fact, the guardian had to have law enforcement officers remove petitioner from her office on one occasion. A service provider testified that petitioner's sessions were not meaningful and she did not believe that petitioner could implement any of the parenting skills or that petitioner could live independently with the children. Petitioner failed to follow simple instructions such as cleaning her home, despite receiving "much more instruction" from the service provider than usual.

Petitioner testified that she did not understand why her children had been removed from her care and insisted that she could care for the children, as she had raised D.S. for five years without any help or intervention. Petitioner's mother testified on her behalf. After hearing evidence, the circuit court found that petitioner had not improved or made any changes in her behavior in six months, that she was not capable of caring for her children, and that she would not attain the ability to do so in the foreseeable future. As such, the circuit court terminated petitioner's parental rights to the children, finding that it was in the children's best interest and that there were no other alternatives. It is from the March 27, 2018, dispositional order that petitioner appeals.[3]

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether

---

[3]The father of O.S. voluntarily relinquished his parental rights below. The parental rights of D.S.'s father were terminated. The children were placed in a foster home and the permanency plan is adoption therein. Additionally, the guardian states that sometime after the dispositional hearing, petitioner was placed in the custody of Adult Protective Services.

such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in denying her a post-adjudicatory improvement period. Petitioner contends that she demonstrated her likelihood of participating in an improvement period by attending the psychological evaluation, participating in services, and undergoing mental health treatment. Petitioner further notes that she successfully raised D.S. for five years without any intervention. As such, petitioner argues that she should have been granted a post-adjudicatory improvement period. We disagree.

The decision to grant or deny an improvement period rests in the sound discretion of the circuit court. *See In re M.M.*, 236 W.Va. 108, 115, 778 S.E.2d 338, 345 (2015) ("West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period."); Syl. Pt. 6, in part, *In re Katie S.*, 198 W.Va. 79, 479 S.E.2d 589 (1996) ("[i]t is within the court's discretion to grant an improvement period within the applicable statutory requirements."). We have held that a parent's "entitlement to an improvement period is conditioned upon the ability of the respondent to demonstrate 'by clear and convincing evidence, that the respondent is likely to fully participate in the improvement period . . . .'" *In re Charity H.*, 215 W.Va. 208, 215, 599 S.E.2d 631, 638 (2004).

Here, petitioner fails to demonstrate that she was likely to fully participate in an improvement period. While petitioner was not granted a formal improvement period, she was granted services targeted at addressing the conditions of abuse and neglect. She was granted supervised visitation and provided parenting and adult life skills classes, but was unable to demonstrate the ability to implement any information taught to her. Several witnesses testified that petitioner was unable to follow simple instructions and repetitively asked the same questions. Further, petitioner's psychological evaluation report indicated that her ability to attain minimally adequate parenting skills within the timeframe of the case was poor and that any services provided to her were likely to be ineffective. After six months of services, the circuit court found that petitioner had not corrected any of the conditions leading to the filing of the petition. Accordingly, we find no abuse of discretion in the circuit court's decision to deny petitioner an improvement period as she was unlikely to successfully participate in the same.

Petitioner next argues that the circuit court erred in terminating her parental rights at a hearing not properly noticed as a dispositional hearing. By doing so, petitioner argues that the

circuit court failed to comply with Rules 31[4] and 32[5] of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings. According to petitioner, the DHHR's notice of intent to terminate her parental rights was insufficient, as Rule 31 sets forth that the circuit court, and not the parties, must issue the notice. Petitioner further argues that Rule 32(b) was not satisfied as she never waived her right to notice or agreed to proceed to disposition. Therefore, petitioner concludes that the termination of her parental rights was in error.

In support of her argument, petitioner relies on *In re Travis W.*, 206 W.Va. 478, 525 S.E.2d 669 (1999), in which this Court reversed the termination of a father's parental rights and remanded the case due to the circuit court's failure to comply with Rules 31 and 32 of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings. In that case, the circuit court held an adjudicatory hearing in which it terminated the father's parental rights at the close of the hearing. 206 W.Va. at 481, 525 S.E.2d at 672. This Court found that the father had not received notice of the intent to proceed to disposition, nor had any of the requirements for an accelerated disposition pursuant to Rule 32(b) been met. 206 W.Va. at 484, 525 S.E.2d at 675. Petitioner argues that her case warrants a similar conclusion. We disagree.

*Travis W.* is distinguishable, in part, as Rule 32(b) of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings was not implicated in the instant case. Here,

---

[4]Rule 31 of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings sets forth that "[n]otice of the date, time, and place of the disposition hearing shall be given to all parties, their counsel, and persons entitled to notice and the right to be heard."

[5]Rule 32 of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings sets forth that

(a) *Time frame.* – The disposition hearing shall commence within forty-five (45) days of the entry of the final adjudicatory order unless an improvement period is granted pursuant to W.Va. Code § 49-4-610(2) and then no later than thirty (30) days after the end of the improvement period.

(b) *Accelerated disposition hearing.* – The disposition hearing immediately may follow the adjudication hearing if:

(1) All the parties agree;

(2) A child's case plan meeting the requirements of W.Va. Code §§ 49-4-408 and 49-4-604 was completed and provided to the court or the party or the parties have waived the requirement that the child's case plan be submitted prior to disposition; and

(3) Notice of the disposition hearing was provided to or waived by all parties as required by these Rules.

the circuit court did not proceed to disposition immediately following the adjudicatory hearing, which is the process contemplated by Rule 32(b). Rather, the circuit court held an adjudicatory hearing in November of 2017 and petitioner's parental rights were not terminated until March of 2018. As such, petitioner's argument regarding Rule 32(b) is without basis.

We find that, under the limited circumstances of this case, petitioner received sufficient notice of disposition pursuant to Rule 31. Following the hearing in December of 2017, the circuit court scheduled a review hearing to be held in March of 2018. Thereafter, in February of 2018, the DHHR filed a notice in which it stated its intent to seek termination of petitioner's parental rights at the March 5, 2018, hearing, and that petitioner could attend to protect her interests. Here, unlike *Travis W.*, petitioner received notice of the DHHR's intent to seek termination of her parental rights prior to the hearing and was informed at the beginning of the March 5, 2018, hearing of the intent to proceed to disposition. The father in *Travis W.*, in contrast, was not advised that disposition would occur until the end of his adjudicatory hearing when the circuit court terminated his parental rights.

We further note that petitioner did not object and did not request a continuance of the dispositional hearing. Instead, petitioner presented evidence on her behalf. Pursuant to West Virginia Code § 49-4-601, "[i]n any proceeding pursuant to this article, the party or parties having custodial or other parental rights or responsibilities to the child shall be afforded a meaningful opportunity to be heard, including the opportunity to testify and to present and cross-examine witnesses." Accordingly, despite her alleged lack of notice, petitioner appeared at the hearing and had the meaningful opportunity to be heard as she was prepared to, and did, testify and present witnesses.

To the extent that petitioner argues the circuit court should have issued the notice rather than the DHHR, we note that "a mere procedural technicality does not take precedence over the best interests of the children." *In re Tyler D.*, 213 W.Va. 149, 160, 578 S.E.2d 343, 354 (2003). As this Court has held on numerous occasions, "the best interests of the child is the polar star by which decisions must be made which affect children." *Michael K.T. v. Tina L.T.*, 182 W.Va. 399, 405, 387 S.E.2d 866, 872 (1989) (citing Syl. Pt. 1, *State ex rel. Cash v. Lively*, 155 W.Va. 801, 187 S.E.2d 601 (1972)). Here, the children's best interests necessitated termination of petitioner's parental rights. Under the limited circumstances of this case, we find that petitioner received sufficient notice pursuant to Rule 31 of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings and find no error in this regard.

With respect to the circuit court's decision to terminate petitioner's parental rights, we find no error. West Virginia Code § 49-4-604(b)(6) provides that circuit courts are to terminate parental rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. According to West Virginia Code § 49-4-604(c)(3), a situation in which there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected includes one in which

> [t]he abusing parent or parents have not responded to or followed through with a
> reasonable family case plan or other rehabilitative efforts of social, medical,

mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare or life of the child[.]

The record demonstrates that termination of petitioner's parental rights was in the best interest of the children and that there was no reasonable likelihood that petitioner could correct the conditions of abuse in the near future. Petitioner received services, including supervised visitation and parenting and adult life skills classes, over the course of six months and failed to respond to services or address the conditions of abuse. Petitioner was unable to implement any information taught to her or follow simple instructions, such as cleaning her home. Petitioner called the DHHR and the service provider up to sixty times per day and repeatedly asked the same questions. Her psychological evaluation report indicated that she was unable to live independently, that she was unlikely to attain minimally adequate parenting skills, and that any services offered by CPS were unlikely to be beneficial. Even during her testimony at the dispositional hearing, petitioner repeatedly refused to admit that her children were abused and neglected and simply stated that she did not understand why her children were removed from her care.

> "Where allegations of neglect are made against parents based on intellectual incapacity of such parent(s) and their consequent inability to adequately care for their children, termination of rights should occur only after the social services system makes a thorough effort to determine whether the parent(s) can adequately care for the children with intensive long-term assistance. In such case, however, the determination of whether the parents can function with such assistance should be made as soon as possible in order to maximize the child(ren)'s chances for a permanent placement." Syllabus point 4, *In re Billy Joe M.*, 206 W.Va. 1, 521 S.E.2d 173 (1999).

Syl. Pt. 4, *In re Maranda T.*, 223 W.Va. 512, 678 S.E.2d 18 (2009). Here, the DHHR made substantial efforts in determining whether petitioner was capable of caring for the children in light of her intellectual limitations. Petitioner was appointed a guardian ad litem, underwent a psychological evaluation, and was granted services specifically targeted to meet her intellectual capacity. However, it was quickly determined that petitioner was unable to adequately care for the children, even with intensive assistance. Accordingly, we find no error in the circuit court's termination of petitioner's parental rights as the record clearly demonstrates that there was no reasonable likelihood that she could correct the conditions of abuse in the near future and that termination was necessary for the children's welfare.

Petitioner next assigns as error the circuit court's failure to grant her post-termination visitation. She argues that post-termination visitation with the children was warranted because of her "track record" of caring for D.S. for his entire life and the bond she shared with him. Petitioner alleges that the circuit court improperly denied her visitation based upon her incessant phone calls and pleas to the general public for help. We find petitioner's argument to be without merit.

"When parental rights are terminated due to neglect or abuse, the circuit court may nevertheless in appropriate cases consider whether continued visitation or other contact with the abusing parent is in the best interest of the child. Among other things, the circuit court should consider whether a close emotional bond has been established between parent and child and the child's wishes, if he or she is of appropriate maturity to make such request. The evidence must indicate that such visitation or continued contact would not be detrimental to the child's well being and would be in the child's best interest." Syl. Pt. 5, *In re Christina L.*, 194 W.Va. 446, 460 S.E.2d 692 (1995).

Syl. Pt. 11, *In re Daniel D.*, 211 W.Va. 79, 562 S.E.2d 147 (2002). The record in the instant case demonstrates that post-termination visitation was not in the children's best interests. Petitioner was initially granted supervised visitation throughout the proceedings. However, these visits had to be suspended due to petitioner's inability to properly care for the children. Petitioner fed D.S. coffee creamer, placed O.S. in precarious locations, lacked a bond with O.S., and failed to redirect D.S. from inappropriate behaviors. The children's guardian opposed post-termination visitation with the children, stating that she believed it would be detrimental to their progress in the foster home. Further, according to the guardian, petitioner is currently in the custody of Adult Protective Services. The circuit court considered petitioner's mental well-being in making the decision. As the record demonstrates that post-termination is not in the best interests of the children, we find no error in this regard.

For the foregoing reasons, we find no error in the decision of the circuit court, and its March 27, 2018, order is hereby affirmed.

Affirmed.

**ISSUED**: October 19, 2018

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Paul T. Farrell sitting by temporary assignment
Justice Tim Armstead
Justice Evan H. Jenkins

Justice Allen H. Loughry II suspended and therefore not participating