578 S.E.2d 343

**In re: TYLER D., Alexander A., and Nevaeh D.**

No. 30908.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 14, 2003.

Decided Feb. 19, 2003.

---

Darrell V. McGraw, Esq., Attorney General, Charleston, West Virginia and C. Carter Williams, Esq., Assistant Attorney General, Petersburg, for WVDH & HR.

William R. Kuykendall, Esq., Keyser, Guardian ad Litem, Max H. White, Esq., Keyser, West Virginia, Attorney for Amanda D.

PER CURIAM:

This abuse and neglect case is before this Court upon appeal of a final order of the Circuit Court of Mineral County entered on July 1, 2002. Pursuant to that order, the abuse and neglect petition brought against the appellee and respondent below, Amanda D.,[1] with regard to her three children, Tyler D., Alexander A., and Nevaeh D., was dismissed, and custody of the children was returned to Amanda D.[2]

In this appeal, the appellants, the West Virginia Department of Health and Human Resources (hereinafter "DHHR") and the children's guardian ad litem, contend that the circuit court erred by dismissing the abuse and neglect petition and returning custody of the children to Amanda D. They further assert that the circuit court erred by not terminating Amanda D.'s parental rights. After carefully reviewing the petition for appeal, the entire record, and the briefs and argument of counsel, we agree with the appellants. Thus, for the reasons set forth below, the final order of the circuit court is reversed, and this case is remanded to the circuit court with directions as set forth herein.

## I.

### FACTS

In October 2000, the DHHR began receiving reports of physical abuse and neglect of Tyler D., born on October 2, 1997, and Alexander A., born on May 15, 1999. The children were in the physical custody of their mother, Amanda D., who at that time was allegedly living with her boyfriend, Jeff W. On January 26, 2001, Amanda D. gave birth to a third child, Nevaeh D.

In February 2001, the DHHR received another referral regarding the children containing allegations of neglect and lack of supervision. In particular, it was reported that while Amanda D. was sleeping, Tyler D. dropped a box of cereal on a gas stove burner which had been left on for heating purposes and a fire ensued. It was also reported that Jeff W. had a tendency to act aggressively toward the children.

---

1. We follow our traditional practice in cases involving sensitive facts and use initials to identify the parties rather than their full names. *See In the Matter of Jonathan P.*, 182 W.Va. 302, 303 n. 1, 387 S.E.2d 537, 538 n. 1 (1989).

2. As discussed herein, Thomas L., the biological father of Tyler D., and Joseph A., the biological father of Alexander A. and Nevaeh D., were also named as respondents, but the petition contained no allegations that either one abused or neglected the children. Thomas L. and Joseph A. are not parties in this appeal.

In March 2001, another referral indicated that the children were inadequately clothed, had poor housing, and lacked supervision. A month later, it was reported that Tyler D. had a burn mark on his arm from a cigarette, scratches on his stomach, a bruised eye, and a burn on his buttocks. When asked about his eye, Tyler D. said that Jeff W. had hurt him. Following another referral just a few weeks later, Tyler D. stated that Jeff W. had hit him again. This time, Tyler D. had a bruise over his left eye.

The DHHR investigated and substantiated these referrals. In April 2001, the DHHR referred Amanda D. to Action Youth Care (hereinafter "AYC") for services. A referral to a speech therapist was also made for Tyler D. Amanda D. did not keep the initial appointments made for her with AYC, but when informed by DHHR that her attendance was mandatory, she attended a June 5, 2001 meeting. At that meeting, Amanda D. reported that Jeff W. no longer lived with her. However, it was later determined that this information was not true.

Additional referrals were made to the DHHR on June 12 and 14, 2001. On June 21, 2001, the DHHR went to the family's residence to complete its investigation. At that time, Tyler D. had a small open burn or blister injury. He indicated that Jeff W. had burned him with a light. Amanda D. maintained that a lamp fell on Tyler causing the burn. Tyler also stated that Jeff W. threw him on the floor and against the walls. Amanda D. initially claimed that Jeff W. no longer lived with her and the children, but later admitted that he stayed there for the most part.

When the DHHR arrived at the home on June 21, 2001, all three children were dirty with hair stuck to their necks and smelled of a strong odor. In addition, there was an odor of urine in the boys' bedrooms. Amanda D. was unable to produce immunization records for the children and was unsure when Nevaeh D., who appeared to be sick, had last been to a doctor.

At the same time, the DHHR learned that an AYC worker had recently observed Jeff W. take Tyler D. to the back of the trailer to the shower after he soiled his pants. The child could be heard crying. After checking on Tyler D., Amanda D. reported that Jeff W. had placed Tyler D. in a cold shower. She said she turned on warm water for him.

Based on all the above, the DHHR sought emergency custody of the children on June 21, 2001. On June 27, 2001, the DHHR filed a lengthy abuse and neglect petition naming Amanda D. as a respondent. Tyler D.'s father, Thomas L., was also named as a respondent along with Joseph A., the father of Alexander A. and Nevaeh D. However, the petition contained no allegations against Thomas L. or Joseph A. At the preliminary hearing, Jeff W. was also named as a respondent.

After they were removed from the home, the children were examined by a pediatrician. Tyler D. was also examined by an ophthalmologist because of his eye injury. It was determined that Tyler D. had sustained a blood clot in his left eye which was likely caused by blunt trauma. Subsequently, Tyler D. underwent surgery to have the blood clot removed from his eye.[3]

During the adjudicatory hearing on August 17, 2001, Amanda D. stipulated to various allegations of neglect contained in the petition. She requested and was granted a post-adjudicatory improvement period. The court took no action with regard to Jeff W. although he was noted on the comprehensive treatment plan. Upon receipt of a favorable home study, the circuit court placed Tyler D. in the custody of his father, Thomas L., who was living in Kentucky. The other two children remained in foster care.

Soon after he began living with this father, Tyler D. started counseling with Hank Mayfield, a licensed psychotherapist. Amanda D. was granted extended visitation with Tyler D. The visits were to take place in Maryland at the home of David D., Tyler D.'s maternal grandfather. After one of his weekend visits at David D.'s home, Tyler D. disclosed to Mr. Mayfield that he had been sexually abused by his grandfather. Mr. Mayfield reported this disclosure to the authorities and visita-

---

3. Documents filed in this appeal indicate that Tyler D. is now blind in his left eye.

tion in David D.'s home was stopped immediately.

As the case progressed, Jeff W. reported that he no longer had a relationship with Amanda D. and was not living with her and the children. He filed a motion seeking to be dismissed from the case. The motion was granted on March 19, 2002, based on Jeff W.'s representations that he had ended his relationship with Amanda D. and her children.

Subsequently, the DHHR requested a disposition hearing. The DHHR recommended that Amanda D.'s parental rights be terminated. The children's case plan prepared by the DHHR stated:

> Although stipulations were presented at the August 17, 2001 adjudicatory hearing, almost three months later Cindy Hay [Amanda D.'s counselor] wrote that Amanda would like to know what she did that was neglectful. Two states, Maryland and Kentucky, have both found that Tyler was sexually abused by Amanda's father David [D.]. In order for Amanda to remedy the problem of abuse and/or neglect, she must first acknowledge that abuse and/or neglect has occurred. Amanda has not done this. In the absence of recognition by Amanda that abuse and/or neglect has occurred, the children remain at risk and it would be unsafe to return the children to their mother. For the above-stated reasons, the [DHHR] recommends that the parental rights of Amanda ... [D.] to [her children] be terminated.

The disposition hearing was held over the course of two days. Mr. Mayfield testified regarding the sexual abuse Tyler D. reported. He indicated that once the visitations in David D.'s house were suspended, Tyler's interactions with his peers and females improved "a hundred percent." Sarah W., a cousin of Amanda D., testified that Amanda D. asked her to lie about Thomas L. by testifying that she was his mistress and that he had tried to run over her with a van. She stated that Amanda D. had also instructed her to file false criminal charges against Thomas L.[4] Sarah W. further indicated that

Jeff W. was still a part of Amanda D.'s life and that she had seen him hit Tyler D. on one occasion in the presence of Amanda D. Margaret Brown, a service coordinator for the West Virginia Birth to Three Program also testified. She had assessed Alex A.'s lack of speech development. Ms. Brown testified that Alex A.'s delays were not caused by a genetic disorder, but instead were attributable to risk factors. Finally, child protective service workers from Maryland and Kentucky testified with regard to the sexual abuse reported by Tyler D. They, like Mr. Mayfield, testified that Tyler's reports of sexual abuse by his grandfather were credible.

At the close of the evidence, the court found that there was no evidence to show that Amanda D. had not complied with the improvement period, nor was there any evidence to show why it was not in the best interests of the children to be returned to their mother. Consequently, the court dismissed the abuse and neglect petition and ordered the children to be returned to their mother's custody. The final order was entered on July 1, 2002, and this appeal followed.

## II.

### STANDARD OF REVIEW

 In Syllabus Point 1 of *In the Interest of: Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996), this Court set forth the standard of review for abuse and neglect cases:

> Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on

---

4. Sarah W. stated that Amanda D. was able to force her to tell these lies about Thomas L. be-

cause Amanda D. was the payee on her social security checks.

the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety.

With this standard in mind, we now consider whether the circuit court erred in this case.

## III.

## DISCUSSION

### A. Jurisdiction

■ At the outset, we must address this Court's jurisdiction in this case. Pursuant to W.Va.Code § 58–5–1 (1998), "[a] party to a civil action may appeal to the supreme court of appeals from a final judgment of any circuit court[.]" As noted above, the DHHR and the guardian ad litem are appealing from a final circuit court order, and thus, this Court has appellate jurisdiction in this case. However, shortly after the circuit court entered its July 1, 2002 final order, Amanda D. moved to Maryland with the children. Consequently, in this appeal, Amanda D. has asserted that this Court no longer has jurisdiction because she and her children are not presently residents of this State. In addition, this Court was advised on January 13, 2003, by the guardian ad litem in this case, that Tyler D., Alexander A., and Nevaeh D. are now in the legal custody of the Allegheny County Department of Social Services of the State of Maryland based on alleged abuse and neglect of the children by Amanda D. Thus, the initial issue we must resolve is whether this Court should render an opinion in this case.

When more than one state becomes involved in determining the custody of a child, the Uniform Child Custody Jurisdiction and Enforcement Act, codified at W.Va.Code §§ 48–20–101 to –404 (2001) (hereinafter

"UCCJA"), applies along with the Parental Kidnapping Prevention Act, 28 U.S.C. § 1738A (1994) (hereinafter "PKPA"). In *West Virginia Dept. of Health and Human Resources ex rel. Hisman v. Angela D.*, 203 W.Va. 335, 342, 507 S.E.2d 698, 705 (1998), this Court recognized that the definition of "custody proceeding" within the UCCJA expressly includes abuse and neglect proceedings. This Court further determined that " 'the PKPA is applicable to all interstate custody proceedings affecting a prior custody award by a different State, including [abuse,] neglect and dependency proceedings." ' *Id.*, quoting *In re Van Kooten,* 126 N.C.App. 764, 769, 487 S.E.2d 160, 163 (1997).

Pursuant to W.Va.Code § 48–20–206(a) ( 2001):

(a) Except as otherwise provided in section 20–204 [§ 48–20–204],[5] a court of this state may not exercise its jurisdiction under this article if, at the time of the commencement of the proceeding, a proceeding concerning the custody of the child has been commenced in a court of another state having jurisdiction substantially in conformity with this chapter, unless the proceeding has been terminated or is stayed by the court of the other state because a court of this state is a more convenient forum under 20–207 [§ 48–20–207].[6]

(Footnotes added). However, in Syllabus Point 6 of *Angela D.*, this Court explained that:

"Notwithstanding their intent to require states adopting the Uniform Child Custody Jurisdiction Act to recognize custody decrees entered by sister states, the Act's drafters in no uncertain terms provided jurisdiction to both the original 'custody court' and other courts to determine whether modification of the initial custody decree is in the best interest of the child." Syl. Pt. 2, *In re Brandon L.E.*, 183 W.Va. 113, 394 S.E.2d 515 (1990).

---

5. W.Va.Code § 48–20–204 (2001) addresses temporary emergency jurisdiction where a child is present in this state and has been abandoned or is subjected or threatened with mistreatment or abuse.

6. This Court is unaware of any stay of the proceedings in Maryland.

In this case, we believe the best interests of the children require this Court to address the merits of this appeal. Given the errors made by the circuit court in this case, we feel that we would be remiss if we did not do so. With that said, this Court recognizes that at this juncture there appears to be litigation involving these children currently ongoing in Maryland. Therefore, this Court has determined that upon remand, and pursuant to the provisions of the UCCJA, the circuit court should immediately contact the Circuit Court of Allegheny County, Maryland. Based on documents filed with this Court, the Maryland Court appears to be conducting proceedings concerning custody of these children. The Maryland Court needs to be aware of the proceedings that have occurred in West Virginia and this Court's decision as set forth herein. In this fashion, the Circuit Court of Mineral County, West Virginia, and the Circuit Court of Allegheny County, Maryland, can determine the appropriate forum for addressing the future of these children consistent with the laws of this State and the laws of the State of Maryland. While it now appears that Maryland is presently the proper forum, in the event that Maryland defers jurisdiction to this State, the circuit court should proceed to enter an order terminating Amanda D.'s parental rights, develop a permanency plan for the children, and determine whether Amanda D. should be afforded continued visitation with her children as set forth below.

### B. Findings of Abuse and Neglect

█ Having resolved the jurisdiction issue, we now turn to the assignments of error raised by the DHHR and the guardian ad litem. They first contend that the circuit court's findings and conclusions were contrary to the evidence. In the final order, the circuit court stated:

6. The State of West Virginia has failed to show by clear and convincing evidence that the minor children were abused and/or neglected.

7. The State has also failed to show why placing T.D., A.A., and N.D. under the custody of Amanda [D.] was not in the best interests of the children.

. . . . .

9. Allegations in petition to support termination of Amanda [D.'s] parental rights are unsubstantiated and unfounded.

10. The minor children herein were not abused and/or neglected by Respondent Amanda [D.]

The DHHR and the guardian ad litem firmly assert that the court's finding that there was no evidence that the children were abused and neglected is clearly erroneous given the stipulations made by Amanda D. during the adjudicatory hearing in this case. We agree.

On August 17, 2001, Amanda D. signed a document stipulating to the allegations of lack of supervision, poor living conditions, and not paying enough attention to the children. She further stipulated that there were occasions when the children were unclean and had an odor due to having no water in the home and that Tyler D.'s clothing was too small for him. Based on these stipulations, the circuit court entered an order on September 10, 2001, finding that Amanda D. neglected Tyler D., Alexander A., and Nevaeh D. However, the court's final order entered on July 1, 2002, states that there was no evidence that the children were neglected. The court clearly erred in that regard.

In addition, we believe that the circuit court erred by finding that there was no evidence that the children had been abused. Contrary to the findings of the circuit court, there was clear and convincing evidence that Tyler D. was physically abused. Specifically, there was evidence that Tyler D. was hit in the face and as a result, suffered a blood clot in his left eye which required surgery. Tyler D.'s physician indicated that Tyler's eye injury was caused by "blunt trauma." Tyler D. also reported that Jeff W. had burned him with a light and threw him on the floor.

Furthermore, there was clear and convincing evidence that Tyler D. was sexually abused. While there was no physical evidence, three witnesses testified that Tyler D's reports of sexual abuse were credible. In particular, Mr. Mayfield, Tyler's psychotherapist, testified that he believed that Tyler was telling the truth about being sexually abused based upon the language he used, the consistency in his statements, and the details

he provided. Likewise, Beverly Green, a child protective services investigator with the Allegheny County Department of Social Services in Maryland, testified that the consistency in Tyler's statements about the sexual abuse indicated that he was being truthful. Finally, Glenda Razo, a case manager for child abuse and neglect in Fort Knox, Kentucky, testified that Tyler's allegations of sexual abuse were credible. All three witnesses indicated that they have considerable experience in dealing with sexually abused children. This evidence cannot simply be ignored.

Although there was no evidence that Alexander A. and Nevaeh D. were physically or sexually abused, they must be considered abused children because they resided in the home where the abuse of Tyler D. occurred. As this Court explained in Syllabus Point 2 of *In re Christina L.*, 194 W.Va. 446, 460 S.E.2d 692 (1995):

> Where there is clear and convincing evidence that a child has suffered physical and/or sexual abuse while in the custody of his or her parent(s), guardian, or custodian, another child residing in the home when the abuse took place who is not a direct victim of the physical and/or sexual abuse but is at risk of being abused is an abused child under W.Va.Code, 49–1–3(a) (1994).

Thus, given all of the above, we find that the circuit court erred by concluding that there was no clear and convincing evidence that these children were abused and neglected.

### C. Termination of Parental Rights

The DHHR and the guardian ad litem further contend that the circuit court erred by not terminating Amanda D.'s parental rights. The DHHR and the guardian ad litem acknowledge that there were no allegations that Amanda D. directly abused or injured her children. However, they assert that the evidentiary record establishes a classic case of failure to protect by a parent. In other words, they contend that Amanda D.'s refusal to acknowledge that Tyler D. was physically and sexually abused puts him and his siblings at risk for further abuse, and thus, warrants the termination of Amanda D.'s parental rights.

In Syllabus Point 3 of *In re Jeffrey R.L.*, 190 W.Va. 24, 435 S.E.2d 162 (1993), this Court held that:

> Parental rights may be terminated where there is clear and convincing evidence that the infant child has suffered extensive physical abuse while in the custody of his or her parents, and there is no reasonable likelihood that the conditions of abuse can be substantially corrected because the perpetrator of the abuse has not been identified and the parents, even in the face of knowledge of the abuse, have taken no action to identify the abuser.

As this Court explained in Syllabus Point 3 of *West Virginia Dept. of Health and Human Resources ex rel. Wright v. Doris S.*, 197 W.Va. 489, 475 S.E.2d 865 (1996):

> "W.Va.Code, 49–1–3(a) (1984), in part, defines an abused child to include one whose parent knowingly allows another person to commit the abuse. Under this standard, termination of parental rights is usually upheld only where the parent takes no action in the face of knowledge of the abuse or actually aids or protects the abusing parent." Syl. Pt. 3, *In re Betty J.W.*, 179 W.Va. 605, 371 S.E.2d 326 (1988).

Moreover,

> "Termination of parental rights of a parent of an abused child is authorized under W.Va.Code, 49–6–1 to 49–6–10, as amended, where such parent contends nonparticipation in the acts giving rise to the termination petition but there is clear and convincing evidence that such nonparticipating parent knowingly took no action to prevent or stop such acts to protect the child. Furthermore, termination of parental rights of a parent of an abused child is authorized under W.Va.Code, 49–6–1 to 49–6–10, as amended, where such nonparticipating parent supports the other parent's version as to how a child's injuries occurred, but there is clear and convincing evidence that such version is inconsistent with the medical evidence." Syl. Pt. 2, *In*

*re Scottie D.*, 185 W.Va. 191, 406 S.E.2d 214 (1991).

Syllabus Point 5, *Doris S.*

In this case, Amanda D. has continuously and persistently denied that Tyler was physically and sexually abused. When speaking with her case workers, Amanda D. was adamant in her denials of abuse of Tyler D. both by her father and her boyfriend. She also denied that she neglected the children after earlier stipulating to that fact. During the disposition hearing, Amanda D. was asked whether she believed that her father, David D., had sexually abused Tyler. She replied, "Let's not say that I do and I do not, I guess anything is possible." Amanda D. then said, "I've never had any concerns about not letting them [my children] around my father."

Amanda D. was also questioned about the allegation that Jeff W. had physically abused her children. She testified as follows:

> Q. Do you believe that Jeff [W.] was ever physically abusive to your children?
>
> A. No. I do not,—
>
> Q. Was he ever physically abusive to you?
>
> A. No.
>
> Q. Okay, are you aware, from Doctor [sic] Mayfield's testimony, that Tyler has said that Mr. [W.] was abusive to him?
>
> A. I believe that its [sic] possible, and, it could have happened, but I've never witnessed it.

While Amanda D. testified at the disposition hearing that she no longer had a relationship with Jeff W., she had previously made the same statement to her case workers, but then later admitted that Jeff W. still lived with her. At one point, Amanda D. asked Sarah W. to pose as Jeff W.'s girlfriend at a multidisciplinary treatment team meeting in an effort to convince the DHHR that she no longer had a relationship with Jeff W. At the disposition hearing, Sarah W. testified that she had seen Amanda D. with Jeff W. during the week before the disposition hearing.[7] Amanda D.'s false testimony and her solicitation of perjured testimony, as well as her recruitment of Sarah W. in the scheme to mislead and defraud the court regarding her relationship with Jeff W. is in and of itself compelling evidence of abuse and neglect. It was a contemptible scheme designed to obstruct and obfuscate so as to allow continued exposure of her vulnerable, helpless children to serious physical abuse at the hands of Jeff W.

Having reviewed the entire record, it is obvious to this Court that Amanda D. has never acknowledged that her children were physically and sexually abused. Although Amanda D. participated in the improvement period granted to her following the adjudicatory hearing, she continued to disbelieve her son's reports of physical abuse by Jeff W. and sexual abuse by David D. Furthermore, despite the stipulations she made at the adjudicatory hearing, Amanda D. never acknowledged that she neglected her children. Three months after she made those stipulations she was asking her counselor "what she did that was neglectful."

In *Doris S.*, *supra*, 197 W.Va. at 498, 475 S.E.2d at 874, this Court explained that:

> [I]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

Given Amanda D.'s refusal to acknowledge that her children have been abused and neglected, we believe that there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected. In Syllabus Point 4 of *In the Matter of Jonathan P.*, 182 W.Va. 302, 387 S.E.2d 537 (1989), this Court held that:

> "Termination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, *W.Va.Code*, 49–6–5 [1977] may be employed without the use of intervening less restrictive alternatives when it is

---

7. During this appeal, this Court was advised by the parties that Amanda D. married Jeff W. two weeks after the circuit court entered its final order in this case.

found that there is no reasonable likelihood under *W.Va.Code*, 49–6–5(b) [1977] that conditions of neglect or abuse can be substantially corrected." Syllabus Point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

■ "Although parents have substantial rights that must be protected, the primary goal in cases involving abuse and neglect, as in all family law matters, must be the health and welfare of the children." Syllabus Point 3, *In re Katie S.*, 198 W.Va. 79, 479 S.E.2d 589 (1996). If we were to affirm the circuit court's decision in this case, the health and welfare of Tyler D., Alexander A., and Nevaeh D. would be in serious jeopardy. Amanda D. has not demonstrated any ability or even willingness to protect her children from further abuse. Furthermore, her ability to correct the conditions of neglect in which the children were found is clearly in serious doubt. This is especially true considering the facts that have come to light since the circuit court entered its final order.

Notwithstanding this Court's findings in this opinion, to be absolutely fair to the trial judge, given the evidence available at the time of the disposition hearing, the court's initial efforts to reunite these children with Amanda D. were reasonable and fair. There is certainly a strong impetus in our law to keep families together if at all possible. At the time the trial judge returned the children to Amanda D., he could not have anticipated that Tyler D. would lose sight in his eye, nor could he have known that Amanda D. would marry Jeff W. In fact, Amanda D. had indicated that she no longer had a relationship with Jeff W., and he had been dismissed from the case based on his representations that he had ended his relationship with Amanda D. and her children. Moreover, Amanda D. did satisfy the requirements of her improvement period. Simply put, the trial judge was faced with a difficult set of facts at the conclusion of the evidence in the disposition hearing. Nevertheless, we are compelled to reverse the final order of the

circuit court and remand this case with instructions to enter an order terminating the parental rights of Amanda D.

Upon remand, the circuit court is further instructed to enter a permanency plan for the children. Based upon the record, it appears to this Court that the appropriate placement for Tyler D. is with his father, Thomas L. Unfortunately, the record is unclear with regard to the appropriate placement for Alexander A. and Nevaeh D. While the case was pending below, there was an effort made to determine whether Alexander and Nevaeh could be placed with their paternal grandmother, Connie A. At Connie A.'s request, her home study was never completed, and the children remained in foster care. Upon remand, the circuit court should explore the possibility of placing Alexander A. and Nevaeh D. with Connie A.[8]

■ Finally, the court should also consider whether it is in the children's best interests to have continued visitation with their mother. This Court has held that:

> When parental rights are terminated due to neglect or abuse, the circuit court may nevertheless in appropriate cases consider whether continued visitation or other contact with the abusing parent is in the best interest of the child. Among other things, the circuit court should consider whether a close emotional bond has been established between parent and child and the child's wishes, if he or she is of appropriate maturity to make such request. The evidence must indicate that such visitation or continued contact would not be detrimental to the child's well being and would be in the child's best interest.

Syllabus Point 5, *Christina L., supra.* Although there was some testimony during the disposition hearing suggesting that it would not be in the children's best interests to have continued contact with their mother, we do not believe that this evidence was fully developed. Accordingly, upon remand, the circuit court should hear argument from all parties on this issue, and take additional evidence if

---

8. Documents filed in this appeal state that after the children were removed from their mother's custody in Maryland, the Allegheny Department of Social Services recommended that Alexander A. and Nevaeh D. be placed in the custody of Connie A. and that Tyler D. be placed in the custody of his father, Thomas L.

necessary, before determining whether continued visitation or other contact with Amanda D. is in the best interests of the children.

### D. Excluded Testimony

While we have already determined that the final order in this case must be reversed, we, nonetheless, are compelled to address one final assignment of error raised by the DHHR and the guardian ad litem. The alleged error concerns the circuit court's refusal to allow Cathy Vibostak, the child protective services worker who filed the abuse and neglect petition in this case, to testify during the disposition hearing. The transcript of the disposition proceedings shows that the State, on behalf of the DHHR, attempted to call Ms. Vibostak to testify during the second day of the hearing. The State had indicated to the court earlier that it had rested its case except for presenting the testimony of Glenda Razo who was going to testify by phone from Fort Knox, Kentucky. While waiting for Ms. Razo to become available, the State attempted to call Ms. Vibostak to testify. Although Ms. Vibostak had been listed as a potential witness for the State, the court refused to allow her to testify because the State had rested its case except for Ms. Razo's testimony. Thereafter, the guardian ad litem attempted to call Ms. Vibostak to testify. Counsel on behalf of Amanda D. objected, stating that the guardian ad litem had failed to provide a witness list. The circuit court sustained the objection and Ms. Vibostak was not permitted to testify.

Pursuant to Rule 30 of the Rules for Child Abuse and Neglect Proceedings, the parties must provide a list of witnesses at least five days prior to the disposition hearing.[9] It appears that the guardian did not do so in this case. However, this Court has long since held that the best interests of the children are paramount in abuse and neglect cases. To that end, the children are entitled to effective representation through a guardian at litem. In Syllabus Point 3 of *State ex rel. Amy M. v. Kaufman*, 196 W.Va. 251, 470 S.E.2d 205 (1996), this Court explained that:

> There is a clear legislative directive that guardians ad litem and counsel for both sides be given an opportunity to advocate for their clients in child abuse or neglect proceedings. West Virginia Code § 49-6-5(a) (1995) states that the circuit court shall give both the petitioner and respondents an opportunity to be heard when proceeding to the disposition of the case. This right must be understood to mean that the circuit court may not impose unreasonable limitations upon the function of guardians ad litem in representing their clients in accord with the traditions of the adversarial fact-finding process.

While the guardian ad litem in this case should have provided a list of witnesses he intended to call to testify at the disposition hearing, we believe the circuit court imposed an unreasonable limitation upon his representation of the children in this matter by not allowing him to present Ms. Vibostak's testimony. A guardian ad litem is certainly required to comply with the Rules for Child Abuse and Neglect Proceedings, and he or she should make every effort to fulfill the role of guardian ad litem as defined by this Court in *In re Jeffrey R.L.*, *supra*. However, a mere procedural technicality does not take precedence over the best interests of the children. In this instance, Ms. Vibostak was listed as a witness by the State, and thus, all parties had notice of her testimony. The circuit court clearly erred by not allowing the guardian ad litem to present Ms. Vibostak's testimony.

### IV.

### CONCLUSION

Accordingly, for the reasons set forth above, the final order of the Circuit Court of Mineral County entered on July 1, 2002, is

---

9. Rule 30 of the Rules of Procedure for Child Abuse and Neglect Proceedings states:

At least five (5) judicial days prior to the disposition hearing, each party shall provide the other parties, persons entitled to notice and the opportunity to be heard, and the court a list of possible witnesses, with a brief summary of the testimony to be presented at the disposition hearing, and a list of issues of law and fact. Parties shall have a continuing obligation to update information until the time of the disposition hearing.

reversed. This case is hereby remanded to the circuit court with directions to immediately contact the Circuit Court of Allegheny County, Maryland, to ascertain the status of the proceedings concerning the children in Maryland; to advise that court of this opinion; and to determine the proper forum for addressing the future of these children. If the Maryland court defers jurisdiction to this State, the circuit court is directed to enter an order terminating the parental rights of Amanda D. to her children, Tyler D., Alexander A., and Nevaeh D.; develop a permanency plan for the children; and determine whether Amanda D. should be afforded continued visitation with her children.

Reversed and remanded with directions.