# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **J.A., K.D. and S.D.**

**No. 22-857** (Wyoming County CC-55-2019-JA-20, CC-55-2019-JA-21, and CC-55-2019-JA-56)

## MEMORANDUM DECISION

Petitioner Mother K.A.[1] appeals the Circuit Court of Wyoming County's October 24, 2022, order terminating her parental rights to J.A., K.D., and S.D.[2] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

In May 2019, the DHS filed a petition alleging that petitioner abused and/or neglected J.A. and K.D. According to the petition, J.A. expressed fear of petitioner's boyfriend and K.D.'s father, D.D. J.A. reported being forced to eat dog feces and drink human urine, and the petition alleged that multiple domestic violence petitions had been filed regarding D.D.'s conduct. The petition further alleged that petitioner sat K.D. in a corner of the home by herself all day long and rarely changed her diaper. Petitioner gave birth to S.D. in October 2019, and the DHS filed a second petition to include that child in the proceedings. Following the filing of the initial petition, J.A. slowly began to reveal further details of the abuse and neglect that he and K.D. endured by petitioner and D.D. J.A. disclosed that D.D. once burned all of J.A.'s belongings; stomped on J.A.'s dog nearly killing it; killed the neighbor's dog in front of J.A.; stabbed, cut,

---

[1]Petitioner appears by counsel William O. Huffman. The West Virginia Department of Human Services appears by counsel Attorney General Patrick Morrisey and Deputy Attorney General Steven R. Compton. Counsel Lela Walker appears as the children's guardian ad litem ("guardian").

Additionally, pursuant to West Virginia Code § 5F-1-2, the agency formerly known as the West Virginia Department of Health and Human Resources was terminated, effective January 1, 2024, and is now three separate agencies—the Department of Health Facilities, the Department of Health, and the Department of Human Services. For purposes of abuse and neglect appeals, the agency is now the Department of Human Services ("DHS").

[2]We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

hit, and threw J.A.; made J.A. record D.D. having sex with petitioner; and punished J.A. by shoving his fingers up J.A.'s rectum. This petition also noted that K.D. suffered from severe developmental delays as a result of being left in a car seat for several months and not being allowed to move. An amended petition was filed in May 2020 that alleged D.D. sexually and physically abused J.A., that D.D. physically abused petitioner in front of J.A., that petitioner knew of the abuse and failed to protect the children, and that the children witnessed domestic violence between petitioner and D.D.

At the outset of the proceedings, petitioner requested visitation with the children, which the guardian opposed. The circuit court ordered the DHS to determine how to facilitate visitation at the next multidisciplinary team ("MDT") meeting. In June 2020, Petitioner underwent a psychological evaluation, and the report recommended visitation with the children. Petitioner filed a motion in September 2020 requesting visitation, which the circuit court denied.

In January 2021, petitioner filed a motion to dismiss for failing to conduct the adjudicatory hearing within thirty days of the filing of the petition. An adjudicatory hearing was set for March 2021, during which petitioner stipulated to multiple issues, including failure to protect, "failure to thrive," and "exposure to domestic violence," resulting in the neglect of the children. The circuit court accepted petitioner's stipulation and adjudicated the children as neglected. Petitioner moved for a post-adjudicatory improvement period, which the circuit court granted.

Petitioner's visits with K.D. and S.D. commenced soon thereafter. J.A. refused to participate and experienced anxiety as a result of K.D. and S.D.'s visits with petitioner. The DHS terminated visitation several weeks later as being in J.A.'s best interests at the urging of J.A.'s psychologist and the guardian. In July 2021, petitioner filed a motion to reinstate visitation. The circuit court granted petitioner's motion and virtual visits with K.D. and S.D. were agreed upon by the parties. In October 2021, petitioner moved to reinstate personal contact with K.D. and S.D., but the circuit court declined to mandate personal contact and instructed the parties to discuss the issue again at the next MDT meeting. The matter was then set for disposition.

Three dispositional hearings were held, which took place over the course of four months beginning in February 2022. J.A., who was twelve years old at the time, requested the opportunity to address the circuit court and express his feelings on the abuse. He testified in-camera about the repeated abuse he suffered from D.D. and petitioner's knowledge of it. Specifically, J.A. explained that D.D. would hit him with his fists and objects and forced J.A. to eat dog feces, drink urine, watch D.D. engage in sexual acts with petitioner, and perform oral sex on D.D. J.A. recalled petitioner being present for the dog feces incident. J.A. also stated that he would scream for help and petitioner would just turn up the television. The DHS also elicited testimony from multiple witnesses who explained that, despite all of the services provided to her, petitioner continued to project responsibility for the abuse suffered by the children onto others. The family services provider explained that during her sessions with petitioner, she never accepted responsibility for the abuse J.A. suffered and continued to discount the extent of J.A.'s abuse. Similarly, the Child Protective Services ("CPS") worker testified that despite complying with the conditions of the improvement period, petitioner continued to deny the abuse J.A. suffered. Moreover, the circuit court heard testimony from petitioner's therapist, who opined that

2

petitioner was still not able to appropriately parent the children. Petitioner testified on her own behalf where she admitted to making mistakes and failing to protect her children, but maintained that she did not know D.D. abused J.A.

At the conclusion of the evidence, the DHS and guardian argued that it was in the children's best interests to terminate petitioner's parental rights. Petitioner argued that because she complied with all the conditions of her improvement period the circuit court should not terminate her parental rights and instead should consider less restrictive alternatives. At a hearing on June 14, 2022, the circuit court terminated petitioner's parental and custodial rights to the children. While the circuit court recognized that petitioner had substantially complied with the terms and conditions of the post-adjudicatory improvement period, it found that there was no likelihood petitioner could gain an adequate capacity to solve the problems of abuse in a timely manner. Thus, the circuit court found that the best interests of the children required termination of petitioner's parental rights.

The dispositional order, however, was not entered until October 24, 2022. That same day, a permanent placement review hearing was held, during which the guardian informed the circuit court of J.A.'s attempt to partially recant his testimony. The guardian explained that following the June 14, 2023, hearing, J.A. ran away from his relative placement due to abuse. The DHS then placed the children in a foster home. The guardian and the CPS worker met with J.A. following the foster placement, and J.A. recanted the sexual abuse allegations by D.D. but confirmed the physical abuse allegations. J.A. claimed he was given a list of questions that the guardian and judge were going to ask him during his testimony. J.A. further claimed that his relative placement rehearsed his answers to those questions. The guardian explained to the circuit court that she knew J.A. was lying about being given a list of questions he was going to be asked because she had not prepared any such list of questions. J.A. explained he was partially recanting his testimony to get his mother out of jail.[3] When it was explained to him that D.D. may get out of jail as well, J.A. changed his mind and asked the guardian to forget he tried to recant.

Upon learning of J.A.'s recantation attempt, petitioner asked the circuit court to withhold entering the dispositional order terminating her parental rights. The circuit court declined to do so because the order should have been entered prior to the recantation. Petitioner subsequently filed a motion to modify the dispositional order and requested an evidentiary hearing on J.A.'s recantation, which the circuit court denied. It is from the dispositional order that petitioner appeals.[4]

---

[3]In 2020, criminal charges were filed against petitioner and D.D. based on the underlying facts of this matter. Petitioner initially was arrested and released on bond. Petitioner remained out of jail until some point in 2022 when she was sentenced pursuant to a plea agreement.

[4]D.D.'s parental rights to K.D. and S.D. have also been terminated. The parental rights of J.A.'s biological father were terminated in separate proceedings in 2010. The permanency plan for the children is adoption in their current placements.

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Before this Court, petitioner asserts three assignments of error.

First, petitioner argues that the circuit court erred by delegating its authority to allow visitation during the pendency of the case to the DHS because the DHS was opposed to any visitation. However, petitioner cites to no relevant authority in support of this position. Instead, she cites to this Court's prior prohibition on a court delegating to a private entity its duty to develop and monitor a plan for the gradual transition of custody of a child when such transfer is necessary. *See* Syl. Pt. 7, *In re George Glen B., Jr.*, 207 W. Va. 346, 532 S.E.2d 64 (2000). While petitioner recognizes that *George Glen B., Jr.* was limited to reunification, she nonetheless contends that the same reasoning should apply to the issue of visitation. We disagree. Visitation is instead governed by Rule 15 of the West Virginia Rules of Procedure for Abuse and Neglect Proceedings, which provides:

> If at any time the court orders a child removed from the custody of his or her parent(s) and placed in the custody of the Department or of some other responsible person, the court may make such provision for reasonable visitation, telephone or video calls, letters, email, or other communication as is consistent with the child's well-being and best interests. The court shall assure that any supervised visitation, telephone or video calls, letters, email, or other communication shall occur in surroundings and in a safe place, dignified, and suitable for visitation, taking into account the child's age and condition. . . . In determining the appropriateness of granting visitation rights to the person seeking visitation, the court shall consider whether or not the granting of visitation would interfere with the child's case plan and the overall effect granting or denying visitation will have on the child's best interests.

Petitioner fails to identify any authority requiring the circuit court to develop and monitor a visitation plan similar to that required by *George Glen B., Jr.* in the reunification context. The record shows that the circuit court deferred to the judgment of the DHS in determining the best interests of all three children with respect to how and when visitation occurred. Accordingly, we find no error in the circuit court's deference to the DHS for implementing visitation consistent with the children's best interests.[5]

---

[5]Petitioner also asserts that it was fundamentally unfair to require her to demonstrate her fitness as parent while also denying her access to her children. Because petitioner fails to provide any analysis concerning this issue in her brief, we decline to address this issue. *See State v. Larry A.H.*, 230 W. Va. 709, 716, 742 S.E.2d 125, 132 (2013) ("Although we liberally construe briefs in determining issues presented for review, issues . . . mentioned only in passing but are not supported with pertinent authority, are not considered on appeal.").

Second, petitioner argues that the circuit court erred by refusing to allow further fact finding after J.A. recanted his testimony. Petitioner asserts that J.A.'s inconsistent testimony regarding her knowledge of or involvement in the abuse of the children undermines the DHS's evidence. We disagree. J.A.'s recantation is immaterial to the disposition of petitioner's parental rights. The question for the circuit court at the dispositional phase is not whether or to what extent the neglect occurred, but, rather, if the conditions of neglect could be substantially corrected in the near future. *See In re S.C.*, 245 W. Va. 677, 682 n.9, 865 S.E.2d 79, 84 n.9 (2021) ("In a child abuse and neglect civil proceeding, the adjudicatory phase and the dispositional phase serve separate purposes. 'The first phase culminates in an adjudication of abuse and/or neglect. . . . The second phase is a dispositional one, undertaken to achieve the appropriate permanent placement of a child adjudged to be abused and/or neglected. . . .'" (citations omitted)). It is clear from the dispositional order that the circuit court based its decision to terminate petitioner's parental rights on her own testimony—not the testimony of J.A. as petitioner argues. The circuit court found that petitioner continued to project responsibility and fault from herself on to others, and as a result there was no likelihood that petitioner could demonstrate or gain an adequate capacity to solve the problems of abuse. *See In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) ("Failure to acknowledge the existence of the problem . . . results in making the problem untreatable . . . ." (citation omitted)). Moreover, the circuit court found petitioner's testimony explaining her actions and inactions unpersuasive and unbelievable. As we have consistently held, "[a] reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations." *Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997). We refuse to disturb these determinations. Accordingly, we find that sufficient evidence existed outside of J.A.'s testimony to terminate petitioner's parental rights, and the circuit court did not err by denying petitioner's motion to modify the dispositional order and recall J.A. for further testimony.

Finally, petitioner alleges that the circuit erred by failing to abide by the time frames required by Chapter 49 of the West Virginia Code and the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings to the detriment of herself and the children.[6] We acknowledge that the circuit court's delay in adjudicating petitioner and entering the dispositional order was in contrast to the applicable timeframes.[7] In *In re J.G., II*, 240 W. Va.

---

[6]Rule 25 requires adjudicatory hearings to be held within thirty days of the temporary custody order entered following the preliminary hearing when a child is placed in the temporary custody of the DHS. Rule 36(a) requires the circuit court to enter the dispositional order within ten days of the conclusion of the hearing.

[7]The record indicates that petitioner's adjudicatory hearing was continued numerous times with at least one continuance to allow for the resolution of D.D.'s criminal matter. We feel compelled to remind the circuit court that child abuse and neglect proceedings are to be given docket priority and are not to be delayed for any other proceeding, including corresponding criminal proceedings. *See* W. Va. R. P. Child Abuse & Neglect Proc. 5. This Court has consistently recognized child abuse and neglect cases as high priority. *See* Syl. Pt. 1, in part, *In re Carlita B.*, 185 W. Va. 613, 408 S.E.2d 365 ("Child abuse and neglect cases must be

194, 205, 809 S.E.2d 459, 464 (2018), we explained that "[t]he time limitations and standards contained [within Chapter 49 of the West Virginia Code, the Rules of Procedure for Child Abuse and Neglect Proceedings, and our extensive body of caselaw] are mandatory and may not be casually disregarded or enlarged without detailed findings demonstrating exercise of clear-cut statutory authority." However, as we have explained on numerous occasions, "the best interests of the child is the polar star by which decisions must be made which affect children." *Michael K.T. v. Tina L.T.*, 182 W. Va. 399, 405, 387 S.E.2d 866, 872 (1989). As such, "a mere procedural technicality does not take precedence over the best interests of the children." *In re Tyler D.*, 213 W.Va. 149, 160, 578 S.E.2d 343, 354 (2003). After a thorough review of the record, the termination of petitioner's parental rights is supported by clear and convincing evidence. Therefore, vacating the dispositional order and remanding the matter for compliance with long-expired time frames would serve no purpose other than to further delay permanency for the children. Accordingly, we find no reversible error.

For the foregoing reasons, we find no error in the decision of the circuit court to terminate petitioner's parental rights. The October 24, 2022, order is hereby affirmed.

Affirmed.

**ISSUED**: February 13, 2024

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Elizabeth D. Walker
Justice John A. Hutchison
Justice William R. Wooton
Justice C. Haley Bunn

BUNN, Justice, concurring:

I agree with the majority's determination that, under the specific facts of this case, the circuit court should be affirmed. We recently held that

> Rule 26(a) of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings requires a stipulated adjudication to include both "(1) [a]greed upon facts supporting court involvement regarding the respondent['s] problems, conduct, or condition" and "(2) [a] statement of respondent's problems or deficiencies to be addressed at the final disposition."

---

recognized as being among the highest priority for the courts' attention. Unjustified procedural delays wreak havoc on a child's development, stability and security.").

6

Syl. pt. 3, *In re Z.S.-1*, 249 W. Va. 14, 893 S.E.2d 621 (2023). The stipulation in this case did not comply with Rule 26(a) of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings. Here, the record reveals that the facts were developed enough throughout the proceedings that petitioner could understand the accusations against her and the conditions of abuse and neglect she was required to correct. Yet, we remind the circuit court and practitioners of the importance of ensuring that stipulations meet the requirements of Rule 26(a), as those requirements are set forth in Syllabus point 3 of *In re Z.S.-1*. 249 W. Va. 14, 893 S.E.2d 621.

For these reasons, I respectfully concur with the majority's opinion in this case.