**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **B.B., J.M., K.M., H.C., D.C., K.C., and W.C.**

**No. 23-4** (Boone County CC-03-2020-JA-108, CC-03-2020-JA-109, CC-03-2020-JA-110, CC-03-2020-JA-111, CC-03-2020-JA-112, CC-03-2020-JA-113, and CC-03-2020-JA-114)

**MEMORANDUM DECISION**

Petitioner Mother C.C.[1] appeals the Circuit Court of Boone County's December 2, 2022, order terminating her parental, custodial, and guardianship rights to B.B., J.M., K.M., H.C., D.C., K.C., and W.C.[2] On appeal, petitioner argues that the circuit court failed to comply with statutory time frames, permitted evidence that fell below the evidentiary standard required for preliminary hearings, and erroneously found that reasonable efforts were made to preserve the family. Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

In July 2020, the DHS filed an abuse and neglect petition against petitioner after she gave birth to B.B. and admitted using heroin and methamphetamine while pregnant. According to the petition, B.B. was born prematurely in June 2020, was positive for Suboxone, and suffered from withdrawal symptoms. While petitioner had a prescription for Suboxone at the time of B.B.'s birth, she admitted to using heroin and methamphetamine during the early part of her pregnancy. Petitioner's medical records indicated that she tested positive for methamphetamine, heroin, and fentanyl during the course of her pregnancy. The petition further alleged that petitioner disclosed domestic violence occurred in the home where J.M. resided with petitioner and the father. The DHS removed B.B. and J.M. from petitioner's custody. At the time the petition was filed, the

---

[1]Petitioner appears by counsel Lauren Thompson. The West Virginia Department of Human Services appears by counsel Attorney General Patrick Morrisey and Deputy Attorney General Steven R. Compton. Counsel Moriah N. Myers appears as the children's guardian ad litem.

Additionally, pursuant to West Virginia Code § 5F-2-1a, the agency formerly known as the West Virginia Department of Health and Human Resources was terminated. It is now three separate agencies—the Department of Health Facilities, the Department of Health, and the Department of Human Services. *See* W. Va. Code § 5F-1-2. For purposes of abuse and neglect appeals, the agency is now the Department of Human Services ("DHS").

[2]We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

remaining children, K.M., H.C., D.C., K.C., W.C., and T.C., were in a legal guardianship with their grandmother.

A preliminary hearing was initially set for August 18, 2020, but was rescheduled for September 15, 2020, because the courthouse was closed due to the COVID-19 pandemic. At the hearing, the DHS presented evidence supporting the allegations in the petition through testimony of the assigned Child Protective Services ("CPS") worker. Based on that evidence, the circuit court found that the removal of B.B. and J.M. was proper. An adjudicatory hearing was initially scheduled for October 2020 but was continued until April 2021 because petitioner and the father "disappeared for a period of time." Meanwhile, the DHS filed an amended petition in March seeking legal and physical custody of K.M., H.C., D.C., K.C., W.C., and T.C. because of the grandmother's death.

At a hearing in April 2021, petitioner requested to continue the adjudicatory hearing. In May 2021, the adjudicatory hearing was continued on two occasions because of the withdrawal of petitioner's and the father's counsel and conflicts of interest with their new appointed counsel. At a hearing in June 2021, petitioner was not present and had not been in contact with her counsel. The matter was continued until July 2021. At the hearing in July 2021, petitioner was present, and the circuit court asked her if she would pass a drug screen following the hearing. Petitioner first stated that she would, but later recanted during the hearing and told the circuit court she would test positive for fentanyl and Suboxone. The circuit court ordered petitioner to enter a long-term drug treatment program immediately. The matter was again continued. At the next hearing in August 2021, the DHS requested a continuance to amend the petition with new information concerning the children. The circuit court also noted that petitioner did not complete long-term drug treatment as ordered. The matter was continued until October 2021.

In October 2021, the DHS filed a second amended petition adding additional allegations of substance abuse and abandonment of the children by petitioner. The second amended petition also outlined the CPS worker's unsuccessful attempts to contact petitioner and the father. The circuit court set the adjudicatory hearing for November 2021.

After a year of continuances, the adjudicatory hearing began in November 2021. At the hearing, the CPS worker testified about petitioner's lack of cooperation with the DHS and the services she was provided. The CPS worker explained that petitioner was ordered to drug test twice a week, but she only tested a total of fifteen times in sixteen months. The CPS worker also explained that although petitioner completed a short-term drug treatment program, petitioner refused to go a long-term drug treatment program as ordered by the circuit court. Further, the CPS worker testified that she had no contact with petitioner or the father from September 2020 to April 2021, and petitioner failed to appear at a Multidisciplinary Team meeting ("MDT") in December 2020. The CPS worker explained that she tried to communicate with petitioner and the father by calling, texting, emailing, leaving messages, driving to the home where petitioner was reportedly staying, and driving around the town of Whitesville to locate petitioner. In addition, the CPS worker stated that petitioner had not seen the children in sixteen months, had not provided them with any financial support, and only asked about them on three occasions since the filing of the petition.

A continuation of the adjudicatory hearing was held in February 2022. At this hearing, petitioner testified that she had used methamphetamine and heroin the week before and admitted to using methamphetamine while pregnant with B.B. Following the hearing, petitioner submitted to a drug screen and tested positive for amphetamine, methamphetamine, buprenorphine, norbuprenorphine, and norfentanyl. The final adjudicatory hearing was held in April 2022. Petitioner did not attend but was represented by counsel. Based on the evidence presented, the circuit court adjudicated petitioner as a neglectful parent due to her substance abuse issues.

The dispositional hearings began in June 2022 and concluded in August 2022. Petitioner did not attend any of the dispositional hearings but was represented by counsel at all hearings. The evidence established that, throughout the proceedings, petitioner failed to keep in contact with the DHS, failed to go to a long-term drug treatment program, failed to consistently drug test after September 2021, failed to appear for hearings, and admitted to continued use of heroin and methamphetamine. The circuit court noted that petitioner had not appeared for or participated in the proceedings for more than eight months. Based on this evidence, the circuit court found that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future and that termination was necessary for the children's welfare and best interests. As a result, the circuit court terminated petitioner's parental, custodial, and guardianship rights to B.B., J.M., K.M., H.C., D.C., and W.C.[3] It is from the dispositional order that petitioner appeals.[4]

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Before this Court, petitioner asserts four assignments of error.[5]

---

[3]Petitioner's parental rights to B.C. and T.C. were not terminated in this dispositional order. B.C. reached the age of majority prior to the dispositional hearing. The circuit court held the motion to terminate petitioner's parental rights to T.C. in abeyance pending further evidence of the circuit court's jurisdiction. That issue has since been resolved, and the circuit court terminated petitioner's parental rights to T.C. in December 2022.

[4]The parental rights of the father of B.B. and J.M. were terminated, as were the parental rights of the father of K.M. The father of H.C., D.C., K.C., and W.C. is deceased. The permanency plan for B.B., J.M., K.M., H.C., D.C., and W.C. is adoption in their current placements. K.C. has reached the age of majority.

[5]One of petitioner's assignments of error is that the DHS instigated petitioner's abandonment of the children by refusing to allow petitioner contact with the children. However, petitioner fails to include citation to the evidentiary record in support of this alleged error, in violation of our rules. *See* W. Va. R. App. P. 10(c)(7) ("The brief must contain an argument exhibiting clearly the *points of fact and law presented,* . . . . The Court may disregard errors that are not adequately supported by specific references to the record on appeal." (emphasis added).). Accordingly, the Court will not address this assignment of error on appeal.

Petitioner first argues that it was error for the circuit court to not hold the preliminary and adjudicatory hearings within the time frames required by the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings.[6] Petitioner contends she was prejudiced by the delays because she had no contact with her children and was not provided services. We acknowledge that the circuit court's delay in holding the preliminary and adjudicatory hearings did not comport with the applicable timeframes. We have held that "[t]he time limitations and standards contained [within Chapter 49 of the West Virginia Code, the Rules of Procedure for Child Abuse and Neglect Proceedings, and our extensive body of caselaw] are mandatory and may not be casually disregarded or enlarged without detailed findings demonstrating exercise of clear-cut statutory authority." *In re J.G., II*, 240 W. Va. 194, 205, 809 S.E.2d 459, 464 (2018). Nonetheless, as we have explained on numerous occasions, "the best interests of the child is the polar star by which decisions must be made which affect children." *See, e.g.*, *Michael K.T. v. Tina L.T.*, 182 W. Va. 399, 405, 387 S.E.2d 866, 872 (1989). As such, "a mere procedural technicality does not take precedence over the best interests of the children." *In re Tyler D.*, 213 W. Va. 149, 160, 578 S.E.2d 343, 354 (2003). After reviewing the record, the removal of B.B. and J.M. was supported by more than sufficient evidence. Therefore, vacating the order following the preliminary hearing and remanding the matter for compliance with long-expired time frames would serve no purpose. It is also clear from the record that the adjudicatory hearing was delayed in large part because of petitioner's actions. The record shows that following the preliminary hearing, petitioner refused to communicate with the DHS, failed to appear at proceedings, requested multiple continuances, and made frivolous motions to recuse and disqualify the circuit court. Accordingly, we find no reversible error.[7]

Petitioner next argues that the circuit court erred by permitting evidence that fell below the evidentiary standard required for preliminary hearings. Petitioner contends that the DHS was required to prove the conditions existing at the time of the filing of the petition by clear and convincing proof at the preliminary hearing to justify removal of the children. Specifically, petitioner asserts that the evidence offered by the DHS at the preliminary hearing was insufficient because it occurred months before the petition was filed rather than at the time the petition was filed. We find no merit in petitioner's argument as petitioner has applied the wrong evidentiary standard. Pursuant to Rule 3(g) of the West Virginia Rules of Procedure for Abuse and Neglect Procedures, a preliminary hearing is held, in part, to determine "whether there is

---

[6]Rule 22 requires circuit courts to conduct a preliminary hearing within ten days after a child is placed in the emergency custody of the DHS at the time an abuse and neglect petition is filed. Rule 25 requires adjudicatory hearings to be held within thirty days of the temporary custody order entered following the preliminary hearing when a child is placed in the temporary custody of the DHS.

[7]Additionally, in support of this assignment of error, petitioner generally asserts that the circuit court erred by not holding preliminary hearings after the amended petitions were filed. Because petitioner fails to provide any meaningful analysis concerning this issue in her brief, we decline to address this issue. *See State v. Larry A.H.*, 230 W. Va. 709, 716, 742 S.E.2d 125, 132 (2013) ("Although we liberally construe briefs in determining issues presented for review, issues . . . mentioned only in passing but [that] are not supported with pertinent authority, are not considered on appeal.").

4

reasonable cause to believe that the child is in imminent danger." As defined by West Virginia Code § 49-1-201, "'imminent danger to the physical well-being of the child' means an emergency situation in which the welfare or the life of the child is threatened." Such a situation exists when "[t]he parent, guardian, or custodian's abuse of alcohol or drugs or other controlled substance . . . has impaired his or her parenting skills to a degree as to pose an imminent risk to a child's health or safety." *Id.* In this case, the CPS worker testified that petitioner admitted to using heroin and methamphetamine while pregnant and that petitioner's prenatal records confirmed petitioner had used fentanyl, methamphetamine, and heroin. Further, the CPS worker testified that petitioner said the father was "physical" with her during an argument while he was intoxicated. Based on that testimony, we find that the circuit court had sufficient evidence to find that B.B. and J.M. were in imminent danger because their welfare was threatened by the risk petitioner's drug use and domestic violence posed to their health and safety.

Finally, petitioner argues that the circuit court erred in finding that the DHS made reasonable efforts to preserve the family. Specifically, petitioner contends that the DHS failed to make reasonable efforts as required by West Virginia Code § 49-4-604(c)(6) because the DHS only provided drug testing and denied her contact with the children despite her passing multiple drug tests. We find no merit to this argument. Pursuant to West Virginia Code § 49-4-604(c)(6), a circuit court is required to consider whether the DHS made reasonable efforts to preserve the family when terminating parental rights. Here, the circuit court clearly outlined in its dispositional order the efforts made by the DHS, which included holding MDT meetings, setting up drug testing, arranging transportation to and from drug testing and court hearings, attempting to contact petitioner through multiple means, driving around petitioner's town to locate her, assisting petitioner in finding in-patient substance abuse rehabilitation centers, and offering visitation with the children upon clean screens. Accordingly, the circuit court found that the DHS made reasonable efforts to preserve the family and make it possible for the children to return home. Contrary to petitioner's argument, the record shows that the DHS provided services beyond drug testing and that the petitioner continually resisted the DHS's efforts by not participating or failing to cooperate. The evidence established that petitioner was informed multiple times that visits would begin with her children following three clean drug tests. Nevertheless, petitioner refused to consistently test. Moreover, the record is devoid of any evidence that petitioner had three clean drug tests, reached out to the DHS to set up visitation, or that she was denied visitation. The record is also devoid of any evidence where petitioner requested additional services or efforts that the DHS refused. For these reasons, we find that the DHS did make reasonable efforts to achieve reunification as required by § 49-4-604(c)(6), and the circuit court's finding on this issue is not erroneous.

The circuit court properly found there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future and that termination of her parental rights was necessary for the children's welfare and best interests. *See id.* (permitting circuit court to terminate parental rights upon finding no reasonable likelihood that the conditions of neglect can be substantially corrected in the near future and when necessary for the child's welfare); *see also* Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011) (permitting termination of parental rights "without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood . . . that conditions of neglect .

. . can be substantially corrected"). Accordingly, termination of petitioner's parental rights to B.B., J.M., K.M., H.C., D.C., and W.C. was appropriate.

For the foregoing reasons, we find no error in the decision of the circuit court, and its December 2, 2022, order is hereby affirmed.

Affirmed.

**ISSUED**: March 6, 2024

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Elizabeth D. Walker
Justice John A. Hutchison
Justice William R. Wooton
Justice C. Haley Bunn