**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **B.S.-S. and N.S.**

**No. 24-338** (Barbour County CC-01-2022-JA-79 and CC-01-2022-JA-80)

**MEMORANDUM DECISION**

Petitioner Mother M.S.-1[1] appeals the Circuit Court of Barbour County's May 20, 2024, order terminating her parental rights to the children, B.S.-S. and N.S.,[2] arguing that the circuit court erred by denying the petitioner's motion to continue the dispositional hearing, denying her request for a post-adjudicatory improvement period, and failing to comply with the time frames required by Rules 25 and 32 of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings. Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming, in part, and vacating, in part, the circuit court's September 27, 2023, and May 20, 2024, orders, and remanding for further proceedings is appropriate, in accordance with the "limited circumstances" requirement of Rule 21(d) of the West Virginia Rules of Appellate Procedure.

On November 2, 2022, the DHS filed an abuse and neglect petition alleging that the petitioner's "serious substance abuse addiction and mental health issues" precluded her from properly caring for the children and that she exposed B.S.-S. to domestic violence between herself and B.S.-S.'s father, M.S.-2. The DHS further alleged that N.S. lived in Pennsylvania with his nonabusing father. According to the record, the petitioner had been living in West Virginia for

---

[1] The petitioner appears by counsel Steven B. Nanners. The West Virginia Department of Human Services appears by counsel Attorney General John B. McCuskey and Assistant Attorney General Lee Niezgoda. Because a new Attorney General took office while this appeal was pending, his name has been substituted as counsel. Counsel Mary S. Nelson appears as the children's guardian ad litem.

Additionally, pursuant to West Virginia Code § 5F-2-1a, the agency formerly known as the West Virginia Department of Health and Human Resources was terminated. It is now three separate agencies—the Department of Health Facilities, the Department of Health, and the Department of Human Services. *See* W. Va. Code § 5F-1-2. For purposes of abuse and neglect appeals, the agency is now the Department of Human Services ("DHS").

[2] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e). Because the petitioner and B.S.-S.'s father share the same initials, we refer to them as M.S.-1 and M.S.-2, respectively.

1

about one year when the petition was filed, but she had not had contact with N.S. for several years because a protective order issued by a Pennsylvania court prohibited her from contacting him.

At the adjudicatory hearing in February 2023, the petitioner submitted a written stipulation admitting that she failed to properly care for the children because of her mental health issues, drug and alcohol addiction, and incidents of domestic violence. She also filed a motion for an improvement period. During questioning by the court, the petitioner explained that she had a history of addiction to alcohol, marijuana, and methamphetamine. She admitted that her drug and alcohol use negatively impacted her mental health, placed B.S.-S. at risk, and precluded her from seeing N.S. The petitioner further admitted that she was involved in one physical altercation with M.S.-2 in the presence of B.S.-S. necessitating a response from law enforcement, that M.S.-2 was convicted of domestic battery, and that she filed for a domestic violence protective order. Nevertheless, she maintained that M.S.-2 was not abusive to her and that she was the aggressor during that incident. The petitioner stated that she was still in a relationship with M.S.-2 and intended to remain in a relationship with him. Based on the petitioner's written stipulation and testimony, the circuit court entered an order on September 27, 2023, finding that N.S. and B.S.-S. were abused and neglected children and adjudicating the petitioner as an abusing and neglectful parent. The court found that jurisdiction was "proper" but failed to conduct an analysis pursuant to the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"), West Virginia Code §§ 48-20-101 to -404. The court held the petitioner's motion for an improvement period in abeyance to give the petitioner "an opportunity to show the Court what she is going to do." The court ordered her to drug test as directed, treat her mental health and substance abuse issues, undergo a psychological evaluation, and remain drug and alcohol free. Finally, the court "admonished the [petitioner] that should she choose to include [M.S.-2] in her life, it [would] effect the breath [sic] and scope of any improvement period."

The court held the dispositional hearing on October 31, 2023. At the start of the hearing, the petitioner was absent. The petitioner's counsel represented to the court that she did not know the petitioner's whereabouts because she had only communicated with the petitioner twice since May 2022. After a brief recess, the petitioner appeared and requested a continuance of the dispositional hearing and a post-dispositional improvement period because she wanted "additional time to show the Court that she [could] comply with what she [was] needing to do." Specifically, the petitioner asserted that she had "some drug treatment lined up" that she "desired to go to." The court denied the petitioner's request for a continuance finding that the matter had been pending for a year, which was "a long period of time that [she] could have done better or began addressing the issues of abuse and neglect," and that "it [was] not in the children's best interests to further continue the matter." The court held her motion for a post-dispositional improvement period in abeyance and proceeded to hear testimony.

The petitioner offered conflicting testimony regarding her continued use of drugs and alcohol and the status of her relationship with M.S.-2. She admitted to consuming alcohol throughout the proceedings, claimed to have stopped consuming alcohol two months prior, and denied any drug use. She later admitted that she would test positive on a drug screen but refused to disclose which substances she had recently used. The petitioner then testified that she was trying to "un-mesh" her life from M.S.-2 and moved "two, three houses down" from him, but she admitted that they were still in a relationship and that she continued to pay his rent. The petitioner

also admitted that she failed to submit for drug screens as required and failed to attend her psychological evaluation. Finally, the petitioner testified that she should be granted an improvement period because she planned to attend a drug treatment program, that she briefly attended a residential treatment program in April 2023, that she participated in counseling, and that she was willing to participate in services. Throughout her testimony, the petitioner refused to answer multiple questions, including how frequently she consumed alcohol or used drugs, whether she participated in services offered by the DHS, and whether she signed releases for the DHS to obtain information concerning her residential treatment. The court advised the petitioner that it would make adverse findings that her answers to those questions would have been against her interest.

The court also heard from a former case worker, who testified that the petitioner's participation in the case was minimal and described her as recalcitrant. He explained that although the petitioner completed a detoxification program, attended some multidisciplinary team meetings, and may have received treatment at an inpatient facility, she failed to sign releases for the DHS to obtain her treatment records, failed to participate in the offered services, and failed to show up for her psychological evaluation, which was scheduled three times. He further explained that the petitioner had not visited with the children since the commencement of the proceedings because she was not compliant with drug and alcohol testing and declined the DHS's offer to have "phone visits" with B.S.-S. because "she did not want to create a bond." During the former case worker's testimony, the petitioner got up to leave the hearing, exclaimed "[t]hese are lies," and claimed to be experiencing a panic attack. However, after a brief discussion with the court, she decided to stay. Next, the ongoing case worker testified that the petitioner missed 109 of 116 drug screens and explained that there were no services the DHS could offer the petitioner to help remediate the conditions of abuse and neglect. The petitioner interrupted the ongoing case worker's testimony and requested to be excused from the hearing. After consultation with her attorney and being advised that the hearing would continue in her absence, the petitioner voluntarily left. At the conclusion of the testimony, the petitioner's counsel renewed the petitioner's motion for a post-dispositional improvement period. She argued that the hearing was "overwhelming" for the petitioner and stated that the petitioner "desire[d] to get treatment."

Ultimately, the circuit court denied the petitioner's motion for a post-dispositional improvement period and terminated her parental rights to the children. The circuit court observed that the petitioner's behavior at the hearing was volatile and "illustrative of the problems that ha[d] occurred throughout [the] case." The court found that the petitioner refused to answer critical questions regarding her drug and alcohol use and treatment thereof, that her testimony was not credible, and that she was dishonest about her relationship with M.S.-2. The court also found that the petitioner continued to abuse drugs and alcohol throughout the case and that she was unwilling "to participate in services designed to remediate the underlying abuse and neglect." The court noted that "[a]ny services provided would be for naught" because the petitioner had nearly one year "to show that she [could] make changes or [would] try to change, which she ha[d] not done." Based on those findings, the court determined that the petitioner was unable to solve the conditions of abuse and neglect on her own or with help, that she "had not responded to or followed through with the recommended and appropriate treatment," and that the conditions of abuse and neglect persisted. As a result, the circuit court concluded that there was no reasonable likelihood that the conditions of neglect and abuse could be substantially corrected in the near future and that

3

termination of the petitioner's parental rights was necessary for the children's welfare.[3] It is from the dispositional order that the petitioner appeals.

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Furthermore, "[w]here the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a de novo standard of review." Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W. Va. 138, 459 S.E.2d 415 (1995). As an initial matter, we observe that the circuit court failed to properly establish jurisdiction over N.S. *See* Syl. Pt. 2, *State ex rel. Universal Underwriters Ins. Co. v. Wilson*, 239 W. Va. 338, 801 S.E.2d 216 (2017) ("This Court, on its own motion, will take notice of lack of jurisdiction at any time or at any stage of the litigation pending therein." (quoting Syl. Pt. 2, *In re Boggs' Est.*, 135 W. Va. 288, 63 S.E.2d 497 (1951))). We have held that the UCCJEA "is a jurisdictional statute, and the requirements of the statute must be met for a court to have the power to adjudicate child custody disputes." Syl. Pt. 3, *In re A.T.-1*, 248 W. Va. 484, 889 S.E.2d 57 (2023) (quoting Syl. Pt. 6, *Rosen v. Rosen*, 222 W. Va. 402, 664 S.E.2d 743 (2008)).

To exercise initial jurisdiction over abuse and neglect proceedings that implicate the UCCJEA, "a court of this state must satisfy one of the four bases of jurisdiction set forth in [West Virginia Code § 48-20-201(a),]" which "have been aptly summarized as 1) 'home state' jurisdiction; 2) 'significant connection' jurisdiction; 3) 'jurisdiction because of declination of jurisdiction'; and 4) 'default' jurisdiction." *In re Z.H.*, 245 W. Va. 456, 464, 859 S.E.2d 399, 407 (2021) (citing *In re J.C.*, 242 W. Va. 165, 171, 832 S.E.2d 91, 97 (2019)). Importantly, "[t]hese jurisdictional bases do not operate alternatively to each other, but rather, in order of priority— reaching the next basis of jurisdiction only if the preceding basis does not resolve the jurisdictional issue." *Id.* In *In re Z.H.*, this Court explained that "home state" jurisdiction is conferred upon a West Virginia court if West Virginia is the child's home state "on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding, and the child is absent from this state but a parent or person acting as a parent continues to live in this state." 245 W. Va. at 464, 859 S.E.2d at 407 (quoting W. Va. Code § 48-20-201(a)(1)). Further, the term "home state"

> means the state in which the child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding . . . . A period of temporary absence of any of the mentioned persons is part of the period.

*In re Z.H.*, 245 W. Va. at 464, 859 S.E.2d at 407 (quoting Syl. Pt. 3, *Rosen v. Rosen*, 222 W. Va. 402, 404, 664 S.E.2d 743, 745 (2008)). When a court of another state has "home state" jurisdiction over a child, a West Virginia court may nevertheless have jurisdiction by meeting the requirements of "significant connection" jurisdiction. West Virginia Code § 48-20-201(a)(2) provides, in

---

[3] The court also terminated the parental rights of B.S.-S.'s father. The permanency plan for B.S.-S. is adoption in his current placement. The permanency plan for N.S. is to remain with his nonabusing father.

relevant part, that a court has "significant connection jurisdiction" when "a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under section 20-207 or 20-208." *See* Syl. Pt. 4, *In re J.C.*, 242 W. Va. 165, 832 S.E.2d 91 (holding that the declination of jurisdiction by the home state court "is not satisfied by evidence that some other person or entity in the child's home state declined jurisdiction").

Here, the record establishes that N.S. had lived with his father in Pennsylvania for several years prior to the commencement of the abuse and neglect proceedings.[4] Thus, Pennsylvania was N.S.'s home state, and the circuit court did not have "home state" jurisdiction over him. Moreover, there is nothing in the record indicating that a court in Pennsylvania declined to exercise jurisdiction. Therefore, the circuit court also did not have "substantial connection" jurisdiction over N.S. Because Pennsylvania had "home state" jurisdiction over N.S. and no court in Pennsylvania declined to exercise jurisdiction, the circuit court could not have "declination" or "default" jurisdiction over N.S. *See* W. Va. Code § 48-20-201(a)(3)-(4) (providing that a circuit court could obtain jurisdiction when "[a]ll courts having jurisdiction under subdivision (1) or (2) of this subdivision have declined to exercise jurisdiction" or "[n]o court of any other state would have jurisdiction under the criteria specified in subdivision (1), (2) or (3) of this subsection").

In addition, the circuit court did not have jurisdiction over N.S. because he was not "an 'abused child' or a 'neglected child' as those terms are defined in West Virginia Code § 49-1-201." Syl. Pt. 2, *In re B.V.*, 248 W. Va. 29, 886 S.E.2d 364 (2023). West Virginia Code § 49-1-201 defines "[a]bused child" as "[a] child whose health or welfare is being harmed or threatened by[ ] . . . [a] parent, guardian, or custodian who knowingly or intentionally inflicts, attempts to inflict, or knowingly allows another person to inflict, physical injury or mental or emotional injury, upon the child or another child in the home." A "[n]eglected child" is defined as one whose "physical or mental health" is "harmed or threatened by a present refusal, failure or inability of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, supervision, medical care, or education[.]" *Id.* Further, West Virginia Code § 49-4-601(i) requires that abuse or neglect must be established based upon "conditions existing at the time of the filing of the petition and proven by clear and convincing evidence." *See also* Syl. Pt, 8, in part, *In re C.S.*, 247 W. Va. 212, 875 S.E.2d 350 (2022) (holding that "a circuit court's finding that a child is an 'abused child' or a 'neglected child' must be based upon the conditions existing at the time of the filing of the abuse and neglect petition"). At the time the petition was filed, N.S. was residing in Pennsylvania with his father, the petitioner had not had any contact with N.S. for several years, and a protective order was in effect preventing the petitioner from contacting N.S. As such, N.S. was not subject to the petitioner's abusive and neglectful behavior, and there was no evidence adduced below indicating that either N.S.'s health or welfare were threatened by the petitioner. Therefore, despite the petitioner's stipulation that she failed to properly care for the children because of her mental health issues, drug and alcohol addiction, and incidents of domestic

---

[4] We, again, remind circuit courts that they "must be watchful for jurisdictional issues arising under the [UCCJEA] . . . . Even if not raised by a party, if there is any question regarding a lack of subject matter jurisdiction under the UCCJEA then the court should sua sponte address the issue as early in the proceeding as possible." *In re Z.H.*, 245 W. Va. at 459, 859 S.E.2d at 402, Syl. Pt. 5, in part.

violence, there was no admission by the petitioner or any specific finding by the circuit court in its adjudicatory order explaining how those conditions resulted in the abuse or neglect of N.S. As such, we must vacate, in part, the circuit court's September 27, 2023, order adjudicating the petitioner as an abusing parent as it pertains to N.S. Likewise, we must vacate, in part, the circuit court's May 20, 2024, order terminating the petitioner's parental rights only as it pertains to N.S.

Turning to the petitioner's assignments of error as they relate to B.S.-S., she argues that the circuit court erred in denying her motion to continue the dispositional hearing. The petitioner contends that the court's reasoning for denying her motion was "improper and flawed" and "effectively denied her a meaningful hearing." While the petitioner is correct that she was entitled to a meaningful opportunity to be heard, we disagree that the circuit court denied her this opportunity by refusing her motion to continue. *See* W. Va. Code § 49-4-601(h) ("[T]he party or parties having custodial or other parental rights or responsibilities to the child shall be afforded a meaningful opportunity to be heard, including the opportunity to testify and to present and cross-examine witnesses."). Likewise, we discern no abuse of discretion in the court's denial of a continuance. It is in the circuit court's discretion to decide whether a continuance of a proceeding is warranted. *See In re Tiffany Marie S.*, 196 W. Va. 223, 235, 470 S.E.2d 177, 189 ("Whether a party should be granted a continuance for fairness reasons is a matter left to the discretion of the circuit court, and a reviewing court plays a limited and restricted role in overseeing the circuit court's exercise of that discretion."). In abuse and neglect cases, we have recognized that "abuse can be found in the denial of a continuance only when it can be seen as 'an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay[.]'" *Id.* at 236, 470 S.E.2d at 190 (quoting *Morris v. Slappy*, 461 U.S. 1, 11–12 (1983) (citation omitted)).

Here, the circuit court's refusal to continue the hearing was neither unreasonable nor arbitrary as there is nothing in the record showing good cause for a continuation. The basis for the petitioner's continuance was to give her "additional time to show the Court that she [could] comply with what she [was] needing to do." However, the record indicates that the petitioner had nearly one year to make such a showing but was noncompliant with almost all aspects of the case. The petitioner's last-minute assertion that she was *planning* to seek treatment for her drug and alcohol addiction was not sufficient to justify her request to delay B.S.-S.'s permanency. *See* Syl. Pt. 1, in part, *In Interest of Carlita B.*, 185 W. Va. 613, 408 S.E.2d 365 (1991) ("Unjustified procedural delays wreak havoc on a child's development, stability and security."). Moreover, the petitioner was given the opportunity to present and cross-examine witnesses at the dispositional hearing. Thus, she was not denied her right to be heard. Accordingly, we discern no error in the circuit court's denial of the petitioner's request to continue the dispositional hearing.

The petitioner next argues that the circuit court erred in denying her an improvement period because she demonstrated that she would comply with the terms thereof. We disagree. West Virginia Code § 49-4-610 permits the circuit court to grant an improvement period when a parent "demonstrates, by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period." However, "[t]he circuit court has the discretion to refuse to grant an improvement period when no improvement is likely." *In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002). The evidence presented at the dispositional hearing supported the circuit court's finding that improvement was not likely. Over the course of the proceedings, the petitioner missed nearly all of her drug screens, failed to appear for her psychological evaluation three times,

and continued to associate with M.S.-2. Further, the petitioner forfeited visitations with B.S.-S. because she refused to submit to drug screens and continued to abuse drugs and alcohol, and she declined the DHS's offer to have "phone visits" with B.S.-S. As we have previously explained, "the level of interest demonstrated by a parent in visiting his or her children while they are out of the parent's custody is a significant factor in determining the parent's potential to improve sufficiently and achieve minimum standards to parent the child." *In re Katie S.*, 198 W. Va. 79, 90 n.14, 479 S.E.2d 589, 600 n.14 (1996) (citations omitted). Therefore, we discern no abuse of discretion in the court's refusal to grant the petitioner an improvement period.

We likewise find no error in the circuit court's decision to terminate the petitioner's parental rights to B.S.-S. The circuit court found that termination was in the best interest of B.S.-S. and that there was no reasonable likelihood that the conditions of abuse and neglect could be corrected in the near future. For the same reasons discussed above, these findings were well supported by the record. *See* W. Va. Code § 49-4-604(c)(6) (permitting circuit court to terminate parental rights upon finding no reasonable likelihood conditions of neglect can be substantially corrected in the near future and when necessary for the child's welfare).

Finally, the petitioner argues that the circuit court erred by failing to comply with the time frames required by Rules 25 and 32 of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings.[5] We acknowledge that the adjudicatory and dispositional hearings were held outside of the applicable timeframes. In *In re J.G., II*, 240 W. Va. 194, 205, 809 S.E.2d 459, 464 (2018), we explained that "[t]he time limitations and standards contained [within Chapter 49 of the West Virginia Code, the Rules of Procedure for Child Abuse and Neglect Proceedings, and our extensive body of caselaw] are mandatory and may not be casually disregarded or enlarged without detailed findings demonstrating exercise of clear-cut statutory authority." Moreover, we have explained on numerous occasions that "the best interests of the child is the polar star by which decisions must be made which affect children." *Michael K.T. v. Tina L.T.*, 182 W. Va. 399, 405, 387 S.E.2d 866, 872 (1989). As such, "a mere procedural technicality does not take precedence over the best interests of the children." *In re Tyler D.*, 213 W. Va. 149, 160, 578 S.E.2d 343, 354 (2003). After a thorough review of the record, the termination of the petitioner's parental rights is supported by clear and convincing evidence. Therefore, vacating the adjudicatory and dispositional orders and remanding the matter for compliance with long-expired time frames would serve no purpose other than to further delay permanency for B.S.-S. Accordingly, we find no reversible error as it relates to B.S.-S.

For the foregoing reasons, we vacate, in part, the circuit court's September 27, 2023, adjudicatory order as it relates to N.S.; vacate, in part, the May 20, 2024, dispositional order terminating the petitioner's parental rights to N.S.; and remand this matter to the circuit court for further proceedings, including but not limited to, communication with the appropriate

---

[5] Rule 25 provides that "[w]hen a child is placed in the temporary custody of the [DHS] . . ., the final adjudicatory hearing shall commence within thirty (30) days of the temporary custody order entered following the preliminary hearing . . . unless a preadjudicatory improvement period has been ordered." Rule 32 provides that "[t]he disposition hearing shall commence within forty-five (45) days of the entry of the final adjudicatory order unless an improvement period is granted . . . and then no later than thirty (30) days after the end of the improvement period."

Pennsylvania court and the entry of an order setting forth the necessary findings as to whether N.S. meets the statutory definitions of an abused or neglected child.[6] *See* W. Va. Code § 49-1-201. The circuit court is further directed to undertake any additional proceedings consistent with the applicable rules and statutes. With respect to B.S.-S., the circuit court's September 27, 2023, adjudicatory order and May 20, 2024, dispositional orders are affirmed. The Clerk is hereby directed to issue the mandate contemporaneously herewith.

Affirmed, in part; vacated, in part; and remanded, with directions.

**ISSUED**: July 30, 2025

**CONCURRED IN BY**:

Chief Justice William R. Wooton
Justice Tim Armstead
Justice C. Haley Bunn
Justice Charles S. Trump IV

---

[6] The vacation of these orders applies only to the petitioner. Accordingly, the portions of the orders concerning other adult respondents remain in full force and effect.